EL PUEBLO DE PUERTO RICO, demandante y recurrido, *v.* JUAN SOMARRIBA GARCÍA, acusado y peticionario.

Número: CE-91-51        Resuelto: 15 de julio de 1992

*Diego Ledee Bazán*, abogado del peticionario; *Jorge E. Pérez Díaz, Procurador General, Anabelle Rodríguez, Subprocuradora General,* y *Aida Ileana Oquendo Graulau, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

I

El peticionario Juan Somarriba García (Somarriba) fue acusado y convicto en el Tribunal de Distrito, Sala de Guayama, por infringir el Art. 264 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4551. De la exposición narrativa de la prueba surgen los hechos más importantes para la adjudicación del presente recurso.

En enero de 1989 el supuesto perjudicado, Enrique Rodríguez Narváez (Rodríguez),[1] le prestó a Somarriba la cantidad de $13,000.05, mediante la entrega de un cheque por la cantidad de $13,094.05. Somarriba le devolvió a Rodríguez un cheque por la cantidad de $94, el cual fue cambiado y *cobrado por éste.*

---

[1] El alegado perjudicado señaló en el testimonio directo que conocía al peticionario hacía seis (6) años.

En esa misma transacción, Somarriba entregó a Rodríguez un cheque por la cantidad de $15,000 para cubrir los $13,000 del préstamo y los *$2,000 de intereses*, según lo había acordado con Rodríguez. Somarriba alegó que en el momento de la transacción le indicó al supuesto perjudicado que el cheque no tenía fondos y que entregó el mismo a éste en "garantía" del préstamo. Por su parte, Rodríguez alegó que acudió al banco con dicho cheque, pero no lo pudo cobrar porque no tenía fondos.([2])

En *mayo de 1989* Somarriba *le abonó $3,000 a Rodríguez mediante tres (3) giros del Banco de Ponce.* También le entregó un cheque por $12,000. Rodríguez, a su vez, le devolvió el cheque original de $15,000.

En julio de 1989 Somarriba abonó $5,000 a Rodríguez *mediante un cheque de gerente* y, al mismo tiempo, entregó a éste el cheque personal de $8,000 (el cual es objeto de la denuncia y convicción que originan este recurso) para cubrir el balance del préstamo montante entonces a $7,000, y para cubrir otra suma adicional de $1,000 respecto a cuyo concepto existe controversia. Rodríguez sostiene que esta suma adicional de $1,000 le fue ofrecida voluntariamente por Somarriba para compensarle por las "molestias" que éste le había causado. Somarriba, a su vez, testificó que tal suma adicional le fue exigida por Rodríguez a cambio de prorrogarle el vencimiento de la obligación, a lo cual accedió el primero debido a su precaria situación financiera.([3]) Por su parte, Rodríguez explicó en el juicio que la razón por la cual pospuso el cobro de este cheque hasta septiembre

---

([2]) De la exposición narrativa de la prueba no se desprende la fecha en que Rodríguez intentó cobrar tal cheque. Resultaría imposible creer que Rodríguez le prestara al acusado $13,000 y éste le pagara simultáneamente tal suma más $2,000 de intereses a Rodríguez, por lo que es obvio que éste sabía que dicho cheque no tenía fondos al momento de su entrega. De esta conclusión se deduce, a su vez, que el cheque fue entregado como *evidencia* del préstamo. Es por eso que Rodríguez no denuncia al acusado por haberle dado este cheque sin fondos.

([3]) Es mucho más creíble la versión del recurrente que la del supuesto perjudicado, ya que el primero no tenía otra razón para expedir el cheque por una cantidad mayor a la adeudada.

de 1989 fue que cuando fue al banco inmediatamente después de haberlo recibido con el propósito de cobrar el mismo, no logró tal propósito debido a la inexistencia de fondos suficientes para ello. Somarriba sostiene que al entregar tal cheque a Rodríguez, éste conocía de la mencionada inexistencia de fondos. La conducta observada, tanto por el acusado como por Rodríguez, respecto a la entrega de los dos (2) cheques anteriores corrobora esta aseveración del apelante.

Somarrriba no pudo hacer efectivo el mencionado cheque a la fecha del vencimiento de la deuda y, según el testimonio de éste, Rodríguez comienza a hostigarlo con llamadas a su trabajo y lo amenaza con denunciarlo, *pero no lo hace*. Finalmente, según declara el acusado, el 9 de diciembre de 1989 obtiene el dinero para pagarle a Rodríguez y le ofrece a éste el pago de los $8,000 mediante un cheque oficial del Banco de Ponce. Rodríguez no aceptó dicho pago y le exigió una cantidad mayor. Lo amenazó con denunciarlo por el delito de expedir cheques sin fondos si no accedía a pagar la cantidad exigida.

En vista de lo anterior, el acusado *acude a un abogado* y, por recomendación de éste, inicia un pleito civil por usura en contra de Rodríguez. Deposita en corte, a su vez, $5,000.05, suma que constituye *el balance del principal original del préstamo*. Véanse: Arts. 1652, 1653 y 1654 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 4594, 4595 y 4596.

*Al día siguiente de haber sido emplazado con copia de la correspondiente demanda, Rodríguez presentó la denuncia contra el peticionario por la expedición del cheque sin fondo por $8,000, objeto de este recurso.*

Sobre las gestiones que realizó para tratar de hacer efectivo el cheque de $8,000, Rodríguez señaló en su testimonio que reclamó *a Somarriba mediante vía telefónica el pago del mismo y "que acudió a Fiscalía". También señaló que preparó una carta en la cual requirió al acusado el*

*pago del cheque. Sin embargo, la misma no pudo ser entregada a su destinatario, ya que, según expresó, dicho documento se le quedó dentro de un maletín "en [una] cancha bajo techo".*

Rodríguez apeló de su convicción ante el Tribunal Superior de Puerto Rico, Sala de Guayama. Este tribunal confirmó la sentencia *por entender que de la exposición narrativa de la prueba "surge que el Estado estableció con la suficiente evidencia la comisión del delito tipificado en el artículo 264 del Código Penal".* Apéndice, pág. 6. Además, el tribunal entendió que el *requerimiento verbal* por parte de Rodríguez cumplió razonablemente con el requisito de interpelación estatuido en el Art. 266 del Código Penal, 33 L.P.R.A. sec. 4553.

Somarriba acude ante este Tribunal, por vía de *certiorari*, y plantea que el Tribunal Superior erró al concluir que el requerimiento verbal por parte de Rodríguez cumplió con dicho requisito e impugna, además, la suficiencia de la evidencia desfilada para sostener su convicción.[4]

## II

El Art. 264 del Código Penal, *supra*, dispone:

Toda persona que con el *propósito de defraudar* a otra haga, extienda, endose o entregue un cheque, giro, letra u orden para el pago de dinero, a cargo de cualquier banco u otro depositario, a sabiendas de que el emisor o girador no tiene suficiente provisión de fondos en dicho banco o depositario para el pago total de cheque, giro, letra u orden a la presentación del mismo, ni disfruta de autorización expresa para girar en descubierto, será sancionada con multa hasta el doble del importe de dicho cheque, giro, letra u orden, pero nunca mayor de quinientos dóla-

---

[4] El señalamiento de error fue el siguiente:

"Incurrió en error manifiesto el Tribunal Superior al concluir que es suficiente, para cumplir con la interpelación a que obliga el Artículo 266 del Código Penal, un requerimiento verbal hecho, y que el Ministerio Público probó los elementos esenciales del delito de Insuficiencia de Fondos (Artículo 264)." Petición, pág. 2.

res, o reclusión de un día por cada dólar que deje de satisfacer hasta un máximo de noventa días, o ambas penas a discreción del tribunal. (Énfasis suplido.)

Por otro lado, el citado Art. 266, referente a la interpelación, dispone:

Ninguna persona será sancionada de acuerdo a la sec. 4552 de este título a menos que se pruebe, a satisfacción del tribunal, que el tenedor del cheque, giro, letra u orden, o su agente, *ha avisado personalmente o mediante carta certificada con acuse de recibo al girador y al endosador* a su última dirección conocida para que pague al tenedor, o a su agente, en la dirección que se indicará *en el aviso*, el importe del cheque, giro, letra u orden *dentro de un plazo no menor de diez días*, si el girador o endosador a quien se dirige *el aviso* residiere en la localidad del tenedor y no menor de quince días si residiere en otro municipio o fuera del Estado Libre Asociado de Puerto Rico. Dicho término se computará desde la fecha del *aviso* al girador o endosante del cheque, giro, letra u orden no pagada. (Énfasis suplido.)

Las citadas disposiciones proceden de las Secs. 1 y 4 de la Ley Núm. 26 de 25 de abril de 1934.(⁵)

■ Los elementos esenciales del delito tipificado por el Art. 264 del Código Penal, *supra*, son los siguientes:

(1) hacer, extender, endosar o entregar un cheque, giro, letra u orden de pago de dinero, a cargo de cualquier banco u otro depositario con conocimiento de que no tiene suficientes fondos para el pago, y

(2) *tener el propósito de defraudar.*

■ Como señalamos en *Valentín v. Torres*, 80 D.P.R. 463, 477 (1958), estos elementos esenciales del delito *deben establecerse en unión al indispensable requerimiento de pago señalado en el citado Art. 266* (Interpelación). El propósito de este requerimiento de pago es proveer un procedimiento *para comprobar* a posteriori, o sea, por hechos

---

(⁵) Código Penal de 1937 (33 L.P.R.A. secs. 1851 y 1854).

subsiguientes, *cuál era la intención o el propósito* que tuvo en su mente el librador de un cheque sin fondos en el momento de expedirlo y entregarlo a otra persona. *Pueblo v. Cuevas*, 54 D.P.R. 301, 305 (1939). Tomando en cuenta que la falta de pago dentro del periodo de diez (10) días dispuesto por el citado Art. 266 *establece una presunción controvertible* de que al expedirse el cheque se hizo *con el propósito de defraudar*,[6] y constituyendo dicho propósito *"la médula del delito de expedir cheques sin fondos"* (*Caballero v. Tribunal Superior*, 81 D.P.R. 689, 695 (1960)), resulta indispensable que el perjudicado por la expedición del cheque sin fondos realice tal requerimiento. Debemos tener presente que con este requerimiento se protege a aquellas personas que hayan librado un cheque creyendo de buena fe que tenían fondos suficientes para su pago. *Pueblo v. Cuevas*, supra.

■ En *Valentín v. Torres*, supra, pág. 479, hicimos claro que la falta de cumplimiento de esta *condición precedente y jurisdiccional* deja sin poder judicial alguno al tribunal para castigar a un acusado por el delito de expedir cheques sin provisión de fondos. Ahora bien, para resolver la controversia planteada es necesario determinar si la interpelación a que se refiere el Art. 266, *supra*, tiene que ser por escrito o puede realizarse verbalmente, como lo determinó el tribunal de instancia.

### III

■ Según lo dispuesto en el mencionado Art. 266, el tenedor del cheque tiene la opción de *"avisa[r] personalmente o mediante carta certificada con acuse de recibo"* al

---

[6] El Art. 267 del Código Penal, 33 L.P.R.A. sec. 4554, dispone:

La falta de pago después de dicha interpelación por parte del que ha girado, firmado, endosado o entregado dicho cheque, giro, letra u orden, *se considerará prima facie como propósito de defraudar.* (Énfasis suplido.)

emisor del cheque. Además dicho *aviso* deberá indicar *la dirección en la cual éste deberá efectuar el pago y el importe del cheque*. Al interpretar este artículo, la profesora Dora Nevares-Muñiz señala que el requerimiento de pago *ha de ser por escrito*. A tales efectos, expresa lo siguiente:

> Para efectos de probar la intención de defraudar es necesario cumplir con el procedimiento de interpelación establecido en el artículo 266. Este consiste en que el tenedor del cheque, giro, letra u orden, o su agente *le avise personalmente por escrito* al girador o endosador para que le pague el cheque o letra de pago dentro del término de diez días dispuestos en el artículo o de quince días si reside en otro municipio o fuera del Estado Libre Asociado. (Énfasis suplido.) D. Nevares-Muñiz, *Código Penal de Puerto Rico: revisado y comentado*, San Juan, Ed. Rev. C. Abo. P.R., 1986, pág. 436.

■ Hay que advertir que el vocablo *"personalmente"* no es sinónimo de *"verbalmente"*. Por lo tanto, tomando en cuenta el propósito del procedimiento de interpelación, el *carácter jurisdiccional del mismo*, y teniendo presente que en dicho aviso (ya sea personalmente o mediante carta certificada con acuse de recibo) debe indicarse *el lugar del pago y el importe del mismo*, resulta obvio que dicho aviso tiene que ser por escrito. Cualquier otra interpretación resultaría contraria al propósito que persigue el requisito de interpelación dispuesto en el mencionado estatuto. Por lo tanto, resolvemos que tal requerimiento de pago tiene que ser hecho al librador mediante un aviso *escrito*, entregado personalmente a éste o mediante correo certificado, a su última dirección conocida, con acuse de recibo.

Los hechos del presente caso ilustran dramáticamente la sabiduría de esta exigencia cuando advertimos que el acusado-recurrente testificó que cuando trató de pagar el importe del cheque, el tenedor del mismo rehusó aceptar dicho pago y exigió una cantidad mayor. De haberse presentado en evidencia copia del escrito mediante el cual se cumplió con el requisito de la interpelación, fácil hubiera

resultado desvirtuar tal testimonio. La ausencia en este caso de copia del referido escrito, a la luz de toda la evidencia presentada en el mismo, tiende a fortalecer la versión del acusado y resta confiabilidad al testimonio del tenedor al efecto de que el primero se negó injustificadamente a pagar el importe del cheque.

## IV

En vista de la conclusión a que hemos llegado, no habremos de extendernos demasiado en la discusión del resto del señalamiento al efecto de que el Ministerio Público no probó los demás elementos del delito. Basta con decir que a la luz de los hechos expuestos precedentemente, aún asumiendo que se hubiera cumplido válidamente con los requisitos de la interpelación, el delito de expedición de cheques sin fondo no fue establecido más allá de duda razonable y fundada.

La evidencia que tuvo ante sí el Tribunal de Distrito tiende a probar, según hemos indicado, que al aceptar el cheque del acusado, Rodríguez sabía que el no tenía fondos. Todo parece indicar que el acusado le entregó el cheque como *evidencia* de la deuda. En tal caso, está ausente el *propósito de defraudar*, el cual, según hemos dicho, constituye el elemento medular del delito. Así lo reconocimos hace más de medio siglo en *Pueblo v. Cuevas*, supra, págs. 306–307, cuando nos expresamos del modo siguiente:

> No hubo en el presente caso intento o propósito de defraudar. El acusado al entregar el cheque al representante de su acreedor reveló a éste el hecho de que él no tenía fondos suficientes para su pago. No se consumó ni podía consumarse fraude alguno contra la compañía acreedora, porque ésta aceptó el cheque a sabiendas de que no había fondos en el banco para su pago y que el pago se haría cuando y si al librador le fuera posible depositar fondos para cubrirlo. La compañía acreedora

no ha sufrido perjuicio alguno como consecuencia del libramiento del cheque, pues éste fu[e] expedido para abonar a una deuda preexistente y no en pago de efectos comprados en el momento de su expedición.

Por el contrario, la evidencia que tuvo ante sí el Tribunal de Distrito tiende a establecer la inocencia del acusado y que fue éste realmente *víctima* del supuesto perjudicado, quien aparentemente denunció al acusado en espúrea respuesta a la acción civil incoada por éste en su contra con el evidente propósito de disuadirle de la misma y/o de encubrir un préstamo usurario, cuyo otorgamiento, a su vez, constituye un delito. Véase Ley Núm. 1 de 15 de octubre de 1973 (10 L.P.R.A. sec. 998).

## V

Aunque reconocemos que la determinación de culpabilidad que hace el juzgador de los hechos a nivel de instancia es merecedora de gran deferencia por parte del tribunal apelativo (*Pueblo v. Cabán Torres*, 117 D.P.R. 645 (1986)) y que de ordinario no intervenimos con el fallo inculpatorio de un magistrado en ausencia de pasión, prejuicio o error manifiesto en la apreciación de la prueba (*Pueblo v. Millán Meléndez*, 110 D.P.R. 171 (1980)), dicha determinación de culpabilidad no constituye una barrera insalvable. *Pueblo v. Cabán Torres*, supra. El Ministerio Público, en este caso, no ha cumplido con el requisito constitucional de probar todos los elementos del delito más allá de duda razonable. Art. II, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1. Con el fin de probar dichos elementos del delito, el Ministerio Fiscal debe presentar prueba " 'que produzca certeza o convicción moral en una conciencia exenta de preocupación' o en un ánimo no prevenido. ... Esa 'insatisfacción' con la prueba es lo que se conoce como 'duda razonable y fundada' ". *Pueblo v. Cabán Torres*, supra, citado en *Pueblo v. Rivero, Lugo y Almodóvar*, 121 D.P.R. 454, 472.

No hemos vacilado en dejar sin efecto un fallo condenatorio cuando el análisis ponderado de la prueba desfilada ante el foro de instancia nos ha producido, como sucede en este caso, una duda razonable y fundada sobre la culpabilidad del acusado. *Pueblo v. Carrasquillo Carrasquillo*, 102 D.P.R. 545 (1974). El error señalado fue cometido.

Por los motivos antes expuestos, *se dictará sentencia que revoca la dictada por el Tribunal Superior, Sala de Guayama, y se absolverá libremente al acusado-peticionario del delito imputado.*

La Juez Asociada Señora Naveira de Rodón emitió voto particular y de conformidad. El Juez Asociado Señor Fuster Berlingeri concurrió con el resultado sin opinión escrita.

— O —

Voto particular y de conformidad emitido por la Juez Asociada Señora Naveira de Rodón.

De la evidencia documental ante nos surge que el acusado-peticionario Juan Somarriba García tomó prestado al Sr. Enrique Rodríguez Narváez, alegado perjudicado, la cantidad de $13,000.05. Somarriba se comprometió a devolverle el principal y dos mil dólares ($2,000) adicionales por concepto de intereses, siendo el total acordado quince mil dólares ($15,000). El acreedor, a pesar de que estaba consciente que Somarriba no tenía fondos suficientes en su cuenta bancaria, le exigió que le entregase un cheque por la totalidad de la deuda. Somarriba se lo entregó.

Durante los meses subsiguientes, Somarriba efectuó dos (2) abonos a la deuda. El primer abono fue de tres mil dólares ($3,000), por lo cual Rodríguez le devolvió el cheque original a cambio de un nuevo cheque personal por la suma de doce mil dólares ($12,000). El segundo abono fue

por la suma de cinco mil dólares ($5,000). Tal como ocurrió la vez anterior, el acreedor le devolvió el cheque de doce mil dólares ($12,000) que tenía en su poder a cambio de otro cheque personal de Somarriba por ocho mil dólares ($8,000). Esta suma corresponde al balance de lo adeudado y mil dólares ($1,000) adicionales sobre los cuales existe controversia entre las partes. Todos los abonos se hicieron mediante giros o cheques oficiales bancarios, cuyo pago está garantizado a su presentación.

Los tres (3) cheques personales expedidos consecutivamente por el peticionario no tenían fondos al momento de entregarlos a Rodríguez. Este hecho era conocido por ambas partes.

Se suscita la controversia cuando Rodríguez decide cambiar el cheque de ocho mil dólares ($8,000) al día siguiente de haberle sido entregado por Somarriba. Obviamente, el cheque no tenía fondos, tal y como lo sabía el acreedor. Al no poder hacer efectivo el cheque personal, Rodríguez se comunicó varias veces con el peticionario y le concedió varios plazos para hacer el depósito, en vista de que Somarriba estaba próximo a recibir una suma que le pagarían por servicios prestados a una firma japonesa. En diciembre de 1989, cuando Somarriba le comunicó a su acreedor que tenía los ocho mil dólares ($8,000) objeto de la controversia, Rodríguez le exigió una suma adicional porque, de lo contrario, presentaría una denuncia por cheques sin fondos contra él.

Así las cosas, Somarriba entabló una demanda por usura contra Rodríguez. Al ser notificado de la demanda, el señor Rodríguez presentó la denuncia por cheques sin fondos contra el peticionario. El Tribunal de Distrito emitió fallo condenatorio contra Somarriba, el cual fue sostenido en apelación ante el Tribunal Superior.

El acusado acude ante nos en petición de *certiorari* para solicitar que revoquemos el fallo.

Estoy conforme con la sabia decisión tomada hoy por

este Tribunal al dictar sentencia revocatoria a la dictada por la Sala de Guayama del Tribunal Superior y absolver al acusado peticionario del delito imputado.

Sin embargo, entiendo que no podemos pasar por alto la manera censurable en que se efectuó, en este caso, toda la negociación del préstamo o los préstamos.

## I

*La prohibición de encarcelamiento por deuda*

La Sec. 11 de la Carta de Derechos de la Constitución es reconocida, mayormente, porque recoge los derechos de los acusados. Sin embargo contiene, además, un derecho que se extiende también a los no acusados: "Nadie será encarcelado por deuda." Art. II, Sec. 11 de la Carta de Derechos, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 308. El legislador constituyente "decidió agrupar en esta sección dos cláusulas que prohíben castigos excesivos", esto es, la referente al encarcelamiento por deudas y la de fianzas y multas excesivas. 4 Diario de Sesiones de la Convención Constituyente 2571 (1951).

La cláusula antes mencionada refleja con claridad que, en el balance de los derechos involucrados, la libertad de las personas prevalece ante consideraciones puramente económicas.

> La [cláusula] que impide la encarcelación por deudas coloca la seguridad y la libertad de la persona por encima de los valores materiales, rechazando la posibilidad de que alguien pueda ser castigado en esta forma por no tener recursos con qu[é] atender sus obligaciones económicas. Diario de Sesiones, *supra*, pág. 2571.

Esta cláusula fue incluida en la Constitución como resultado de la proposición de la delegación socialista.[1]

---

[1] 3 Diario de Sesiones de la Convención Constituyente 2373 (1952). Con respecto a esta prohibición, Don José Trías Monge narra que, aunque no existía una

Desde 1917, treinticinco (35) años antes de la vigencia de nuestra Constitución, estaba ya prohibido el encarcelamiento por deudas en Puerto Rico. El Acta Jones, en su sec. 2, párrafo 6, disponía: "Ninguna persona será encarcelada por deudas." Acta Jones, 39 Stat. 951, Documentos Históricos, Sec. 2, L.P.R.A., Tomo 1, ed. 1982, pág. 62. A su vez, este párrafo había sido copiado de la Ley Orgánica para las Islas Filipinas. Ley Pública Núm. 240 de 29 de agosto de 1916, Cap. 416, 39 Stat. 545, 546. Es el representante William Atkinson Jones quien impulsa la aprobación de ambas leyes en el Congreso.

Puerto Rico no es la única jurisdicción que prohíbe constitucionalmente el encarcelamiento por deuda. Hay varias constituciones estatales que también contienen la misma prohibición de manera breve y clara, como la de Vermont ("No person shall be imprisoned for debt."). Sin embargo, hay otras jurisdicciones que incluyen excepciones limitadas a la cláusula. Por ejemplo, en Idaho y Nebraska, los casos en los que ha mediado fraude quedan exceptuados de la prohibición. Aún más, hay estados como Alaska en los cuales la cláusula constitucional no protege a los deudores que se ocultan.[2]

II

*Incorporación de nuevos delitos al Código Penal*

El novedoso esquema utilizado por el acreedor en el presente caso, de requerir un cheque personal como meca-

---

disposición comparable en la Constitución norteamericana, "los anteproyectos de las diversas delegaciones la incluían religiosamente entre los derechos del ciudadano y, como en otras ocasiones, se sacrificó la estética a la paz". J. Trías Monge, *Historia Constitucional de Puerto Rico*, San Juan, Ed. U.P.R., 1982, Vol. III, pág. 197.

[2] Documentos Históricos V.S.A. Sec. 40 (1995); Const. de Idaho, Art. I, Sec. 15; Const. de Nebraska, Art. I, Sec. 20; Const. de Alaska, Art. I, Sec. 17. Para una lista más detallada de la situación en las constituciones estatales, véase Dobbs, *Contempt of Court: A Survey*, 56 (Núm. 2) Cornell L. Rev. 183, 270 (1971).

nismo de coacción para facilitar el cobro de una deuda y evadir la prohibición constitucional de encarcelamiento por deuda, nos lleva a analizar el proceso mediante el cual se incorporan nuevos delitos a las leyes penales. Veamos.

A través de la historia del mundo occidental, la criminalización de conductas ha sido un proceso dinámico de transformación. Conductas que en la Edad Media se consideraban crímenes que conllevaban castigos severos han pasado a ser ofensas menores (*e.g.*, el adulterio). También ha ocurrido a la inversa, como en el caso del infanticidio, que fue una conducta legitimada en algunas sociedades durante la Edad Antigua pero luego se convirtió en un crimen severamente penalizado. Durante el siglo XV, la colaboración de los obreros para unirse con visos a conseguir aumentos salariales era considerado un crimen capital mientras que al presente dicha colaboración se ha convertido en el ejercicio de un derecho que raya en el deber. G. De Tarde, *Penal Philosophy*, Nueva Jersey, Patterson Smith, 1968, págs. 403–412. Cabe señalar que los cambios de percepción por parte de la sociedad sobre cuáles conductas constituyen delitos no necesariamente se incorporan al mismo tiempo a las leyes penales.[3]

Entendemos que por tratarse de una conducta novedosa

---

[3] En Puerto Rico la Legislatura ha incorporado nuevos delitos al Código Penal y a otras leyes especiales en ocasiones cuando han surgido nuevas conductas que son contrarias a las normas socialmente aceptadas. A manera de ejemplo, consideremos el delito de vender fraudulentamente terrenos localizados fuera de Puerto Rico. Este delito fue creado a raíz del auge en las ventas de bienes raíces en Estados Unidos, especialmente en el estado de Florida, durante la década de 1960. Ocurría que personas inescrupulosas vendían terrenos a través de anuncios engañosos.

"Ante esta situación, en varias jurisdicciones se ha aprobado legislación para proteger a las personas que desean adquirir estos terrenos. Reconociendo que es la obligación de la Asamblea Legislativa velar por el bienestar del pueblo puertorriqueño y evitar que éste sea víctima de fraudes y engaños se deben tomar en Puerto Rico aquellas medidas que sean necesarias para la protección de los intereses de nuestros ciudadanos." Exposición de Motivos de la Ley Núm. 52 de 6 de junio de 1963, Leyes de Puerto Rico, págs. 84–85.

Los Arts. 193 y 194 del Código Penal tipifican la conducta fraudulenta llevada a cabo en Puerto Rico con relación a la publicación de anuncios engañosos o venta fraudulenta de bienes inmuebles sitos fuera de Puerto Rico. 33 L.P.R.A. secs. 4311 y 4312.

todavía no se haya criminalizado la censurable práctica ejemplificada en el esquema de cobro, eje central de este caso: exigir a un deudor un cheque personal como garantía de pago, especialmente cuando se está consciente que dicho deudor no tiene fondos suficientes en su cuenta bancaria.

## III

*Análisis del esquema de cobro*

Pasemos, pues, a analizar en detalle el esquema ingeniado por el acreedor en el presente caso para utilizar las leyes penales y los recursos del Estado como mecanismos de cobro.

Antes que todo, debemos examinar si es legítima la exigencia del acreedor a su deudor de un cheque personal como garantía de pago, aún cuando el acreedor tenga conocimiento de que al momento de expedirlo no hay fondos suficientes en la cuenta bancaria para cubrir su importe. Tomamos conocimiento de que en el transcurso regular de los negocios se exigen garantías de pago con el propósito de asegurar el cobro de una acreencia. Un acreedor puede exigir, antes de conceder un préstamo, que su deudor le traiga un codeudor o que le expida un pagaré garantizado con hipoteca o que de alguna otra forma legítima garantice la deuda.

Ahora bien, un cheque personal girado en contra de una cuenta corriente que no tiene fondos para respaldarlo no constituye ni puede constituir una garantía legítima para el pago de la deuda. Por el contrario, un cheque expedido bajo estas circunstancias por exigencias del acreedor podría ser utilizado por éste de manera ilícita. Primero, le permite al acreedor mantener una presión indebida sobre el deudor para que éste le pague, bien sea bajo las mismas condiciones pactadas o bajo otras (que pueden ser más onerosas para el deudor y hasta ilegales), siempre bajo la ame-

naza de que puede denunciarlo si incumple. Queda el deudor, entonces, a merced de la voluntad de su acreedor. Segundo, le permite también denunciar penalmente al deudor si éste incumple su obligación y tener de esta manera acceso a los procedimientos penales y recursos del Estado para cobrar una deuda civil privada.

El esquema ingeniado por el acreedor podría considerarse una modalidad del delito de extorsión bajo la modalidad de intimidación. El Art. 175 del Código Penal, 33 L.P.R.A. sec. 4281, sanciona a toda persona que obligue a otra a realizar, tolerar u omitir algo, bajo circunstancias que no constituyen robo, mediante la violencia o la intimidación. Entre las formas de intimidación en extorsión ha quedado tipificada en el Art. 176 (b) la siguiente:

La intimidación como medio de extorsión podría ser ocasionada, entre otras, por amenazas en cualesquiera de las siguientes formas:

b) *De denunciar a dicho individuo o a algún miembro de su familia de haber cometido algún delito.* (Énfasis suplido.) 33 L.P.R.A. sec. 4282(b).

Con respecto a este inciso, la profesora Dora Nevares-Muñiz nos explica:

El inciso b) cubre la situación en que el contenido de la amenaza o intimidación consiste en que se habrá de denunciar al extorsionado o a algún miembro de su familia de haber cometido un delito. El que sea cierto que la persona ha cometido el delito no es defensa capaz de derrotar el delito de extorsión. *Pueblo v. Alvira*, 69 D.P.R. 287 (1948). Cuando una persona ha cometido un delito y un ciudadano conoce tal hecho tiene la obligación de denunciarlo a las autoridades, por eso el que ello sea cierto, no exime de responsabilidad a la persona que se vale de tal hecho para obtener ilegalmente bienes o que se realice conducta determinada por parte del extorsionado. D. Nevares-Muñiz, *Código Penal de Puerto Rico: revisado y comentado*, San Juan, Ed. Rev. C. Abo. P.R., 1986, pág. 311.

Bajo el esquema ideado por el acreedor en el presente

caso, éste podría tratar de obtener ilegalmente bienes de su deudor (como lo serían, por ejemplo, intereses usurarios), intimidándolo con la amenaza de denunciarlo por expedir cheques sin fondos.

Consideramos que el esquema utilizado por el acreedor en este caso podría constituir una modalidad del delito de extorsión por intimidación. El señor Rodríguez no sólo pretendió evadir la Ley de Usura, sino que utilizó los limitados recursos que tiene el Estado para lidiar con conducta delictiva propiamente, para cobrar una deuda de naturaleza civil privada.

El Estado desacertadamente prestó su colaboración iniciando un proceso criminal contra el infortunado deudor. Desafortunadamente, y a pesar de que no se configuró el delito de expedir cheques sin fondos por no haberse podido probar el elemento de intención de defraudar —ya que el acreedor tenía conocimiento de que el cheque no tenía fondos, véase el Art. 264 del Código Penal, 33 L.P.R.A. sec. 4551— el peticionario Somarriba fue encontrado culpable por el Tribunal de Distrito. Luego, el Tribunal Superior confirmó la sentencia en apelación.

El intentar utilizar un procedimiento criminal para coaccionar a la persona sujeta a dicho proceso a que pague una deuda civil ha sido generalmente reconocido como suficiente para constituir un motivo o propósito impropio. Anotación, *Use of Criminal Process to Collect Debt as Abuse of Process*, 27 A.L.R.3d 1202 (1969).

Creemos muy apropiadas las expresiones siguientes:

"[A] *criminal prosecution is intended to bring to justice a person who has committed a crime, and not to aid in the collection of a civil debt, and that arrest of a person on a misdemeanor charge with the object of forcing the payment of money is in itself a perversion of the object intended by the law.*" (Énfasis suplido.) Anotación, *supra*, pág. 1207. Véase *West v. Lipsitz*, (1962–Pa) 58 Lanc. L. Rev. 327.