CC-1998-551                                                        1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br>        Recurrido<br><br>        v.<br><br>Rosa Feliciano Rodríguez<br>        Peticionaria | Certiorari<br><br>2000 TSPR 35 |

Número del Caso: CC-1998-0551

Fecha: 29/02/2000

Tribunal de Circuito de Apelaciones: Circuito Regional V

Juez Ponente: Hon. Jocelyn López Vilanova

Abogados de la Parte Peticionaria: Lcdo. Juan Muñiz Belbrú

Oficina del Procurador General: Lcda. Edda Serrano Blasini,
                                Sub-procuradora General
                                Lcda. Yasmín Chaves Dávila
                                Procuradora General Auxiliar


Materia: Ley 141


        Este documento constituye un documento oficial del Tribunal
        Supremo que está sujeto a los cambios y correciones del
        proceso de compilación y publicación oficial de las
        decisiones del Tribunal. Su distribución electrónica se hace
        como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

Recurrido

    v.                          CC-1998-551

Rosa Feliciano Rodríguez

Peticionaria

SENTENCIA

San Juan, Puerto Rico, a 29 de febrero de 2000.

I

El 30 de noviembre de 1998, aproximadamente a las 8:45 de la noche, hubo una colisión de tres vehículos de motor en la calle Victoria en Ponce, Puerto Rico. Todos transitaban de este a oeste por la referida vía. El primer vehículo, una camioneta de cajón abierto marca Ford F-100, era conducido por un tercero[1]; detrás de éste, un Nissan Sentra propiedad de Lissette Vázquez López (en adelante "la perjudicada"); por último, un

---

[1] El conductor de dicha camioneta abandonó el área antes de que el agente policíaco, Pablo De Jesús Borrero, llegara al lugar de los hechos, por lo que no pudo tomársele ningún tipo de información (incluyendo el número de la tablilla).

vehículo marca Volvo, conducido por Rosa Feliciano Rodríguez (en adelante "la peticionaria").

El Ministerio Público le imputó a la peticionaria un cargo por infracción a la sección 5-201 de la Ley Núm. 141 de 20 de julio de 1960, según enmendada, conocida como la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 871.[2]  Sostuvo que ésta conducía con voluntario o malicioso menosprecio por la seguridad de personas y/o propiedades;  que al llegar frente al negocio "Maroan Hair Styling", ubicado en el #310 de la calle Victoria, no guardó la distancia prudente entre vehículos, lo que dio lugar a que impactara el vehículo de la perjudicada por la parte posterior, quien a su vez impactó a la camioneta.

Para sostener dicho cargo, el Ministerio Público presentó los testimonios de la perjudicada y del agente De Jesús Borrero. Por su parte, la defensa presentó el testimonio de la peticionaria.  Así las cosas, el 29 de abril de 1997, el tribunal de instancia encontró culpable a la peticionaria del delito imputado.[3]

No conforme, el 20 de junio de 1997, la peticionaria recurrió ante el Tribunal de Circuito de Apelaciones mediante escrito de apelación.  Impugnó la apreciación y suficiencia de la

---

[2] La sección 5-201 de la Ley Núm. 141, *supra*, dispone en la parte pertinente:

> "(a) Toda persona que condujere un vehículo con voluntario o malicioso desprecio por la seguridad de personas o propiedades será culpable de conducir temerariamente e incurrirá en delito menos grave y convicta que fuere se le castigará con una multa no menor de cien (100) dólares ni mayor de quinientos (500) dólares o cárcel por un término no menor de un mes ni mayor de seis (6) meses, o ambas penas a discreción del tribunal.
>
> (b)  ...."

[3] Oportunamente, la peticionaria solicitó reconside-ración al tribunal de instancia, que la denegó mediante resolución de 21 de mayo de 1997, notificada el 3 de junio de 1997.

prueba en su contra y la negativa del tribunal de instancia de absolverla perentoriamente.

El Tribunal de Circuito de Apelaciones, mediante sentencia de 19 de mayo de 1998, archivada en autos el 1 de junio de 1998, confirmó el dictamen del tribunal de instancia. Sostuvo que, de la exposición narrativa de la prueba se desprende que hubo dos versiones sobre la manera en que ocurrió el accidente y que la versión de la perjudicada le mereció credibilidad al Tribunal de instancia. También señaló que un foro apelativo no debe revocar la sentencia apelada si el tribunal de instancia no actuó mediante prejuicio, parcialidad o error manifiesto en la adjudicación de la prueba.

Inconforme, el 1 de julio de 1998, la peticionaria acude ante nos mediante petición de certiorari. Aduce que:

> "[c]ometió grave error el Honorable Tribunal de Circuito de Apelaciones al sostener la no absolución de la peticionaria, aún cuando el Ministerio Público no probó su caso más allá de duda razonable."

El 6 de noviembre de 1998, expedimos auto de certiorari. Perfeccionado el recurso, estamos preparados para resolver.

II

Nuestro ordenamiento jurídico constitucional consagra la presunción de inocencia como uno de los derechos fundamentales que asiste a todo acusado. Así dispone el Artículo II, Sección 11, de la Constitución del Estado Libre Asociado de Puerto Rico:

> "[e]n todos los procesos criminales, el acusado disfrutará del derecho a un juicio rápido y público, a ser notificado de la naturaleza y causa de la acusación recibiendo copia de la misma, a carearse con los testigos de cargo, a obtener la comparecencia compulsoria de testigos a su favor, a tener asistencia de abogado, y a gozar de la presunción de inocencia...."

Sobre el particular, la Regla 110 de Procedimiento Criminal, 34 L.P.R.A. Ap.II, establece que:

> "[e]n todo proceso criminal, se presumirá inocente al acusado mientras no se probare lo contrario, y en caso de existir duda razonable

acerca de su culpabilidad, se le absolverá. Si la duda es entre grados de un delito o entre delitos de distinta gravedad sólo podrá condenársele del grado inferior o delito de menor gravedad."

En cuanto a la evaluación y suficiencia de la prueba, la Regla 10 de las Reglas de Evidencia de Puerto Rico, 32 L.P.R.A. Ap. IV, dispone que:

"[e]l tribunal o juzgador de hechos deberá evaluar la evidencia presentada, a los fines de determinar cuáles hechos han quedado establecidos o demostrados, con sujeción a los siguientes principios:

(a) El peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por ninguna de las partes...."

Con respecto al *quantum* de prueba en casos criminales, en *Pueblo v. González Román*, Opinión de 20 de junio de 1995, 138 D.P.R. ___, 95 J.T.S. 86, pág. 989, sostuvimos que la evidencia presentada por el Ministerio Fiscal debe producir certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. A esos fines expresamos que:

"...*El Ministerio Fiscal no cumple con ese requisito presentando prueba que meramente sea "suficiente", esto es, que "verse" sobre todos los elementos del delito imputado; se le requiere que la misma sea "suficiente en derecho". Ello significa que la evidencia presentada, "además de suficiente, tiene que ser satisfactoria, es decir, que produzca certeza o convicción moral en una conciencia exenta de preocupación" o en un ánimo no prevenido. Esa "insatisfacción" con la prueba es lo que se conoce como "duda razonable y fundada". Pueblo v. Rivero Diodonet, 121 D.P.R. 454 (1988); Pueblo v. Cabán Torres, 117 D.P.R. 645 (1986); Pueblo v. Carrasquillo, 102 D.P.R. 545 (1974); Pueblo v. Toro Rosas, 89 D.P.R. 169 (1963); Pueblo v. Ortiz Morales, 86 D.P.R. 456 (1962).*" (Bastardillas en el original.)

En *Pueblo v. Soto González*, Opinión de 7 de julio de 1999, 99 T.S.P.R. 116, 99 J.T.S. 117, pág. 1368, indicamos que el concepto de duda razonable "tiene una similitud con el amor: es un tanto difícil de definir y describir pero podemos reconocerlo cuando está frente a nosotros....La duda razonable se concretiza en nuestra mente cuando, llegado el día de decidir la

culpabilidad del acusado, nos encontramos vacilantes, indecisos, ambivalentes o insatisfechos en torno a la determinación final...."

Sobre el particular, en *Pueblo v. Cruz Granados*, 116 D.P.R. 3, 21 (1984), sostuvimos que:

> "[r]efiere la duda razonable en su sentido lexicográfico una 'indeterminación del ánimo entre dos juicios o dos decisiones', o una '[s]uspensión voluntaria y transitoria del juicio para dar espacio y tiempo al espíritu a fin de que coordine todas sus ideas y todos sus conocimientos', razonablemente, esto es, '[c]onforme a la razón'. *Diccionario de la Lengua Española* , Real Academia Española, 20ma ed., Madrid, Ed. Espasa– Calpe, 1984, págs. 518, 1147."

Con respecto a su significado jurídico, allí sostuvimos que existe duda razonable cuando, después de un cuidadoso análisis, examen y comparación de la totalidad de la prueba, no surge una firme convicción o certeza moral con respecto a la verdad de los hechos envueltos en la acusación. *Id.*

Allí, también, hicimos la salvedad de que:

> "[e]sto no significa que deba destruirse toda duda posible ni que la culpabilidad del acusado tenga que establecerse con certeza matemática, sino que la evidencia debe producir aquella certeza moral que convence, dirige la inteligencia y satisface la razón. Duda razonable es una duda fundada, producto del raciocinio de todos los elementos de juicio envueltos en el caso. No debe ser pues, una duda especulativa o imaginaria. La duda que justifica la absolución no sólo debe ser razonable, sino que debe surgir de una serena, justa e imparcial consideración de toda la evidencia del caso o de la falta de suficiente prueba en apoyo de la acusación. (Cita omitida.)" *Id.*, págs. 21-22.

Es doctrina trillada que, de ordinario, los tribunales apelativos no intervendrán con la apreciación de la prueba realizada por los juzgadores de hechos. Sin embargo, ello no significa que dichas determinaciones sean infalibles. Sobre este particular, en *Pueblo v. González Román, supra,* señalamos que:

> "[d]e ahí en [sic] que en muchos casos no hemos vacilado en dejar sin efecto un fallo condenatorio cuando un análisis de la prueba que

tuvo ante sí el tribunal sentenciador nos deja serias dudas, razonables y fundadas, sobre la culpabilidad del acusado.... Hasta tanto se disponga de un método infalible para averiguar sin lugar a dudas dónde está la verdad, su determinación tendrá que ser una cuestión de conciencia. Ese deber de conciencia no para en el fallo del tribunal sentenciador. Nosotros también tenemos derecho a tenerla tranquila. *Pueblo v. Somarriba García*, Op. y Sentencia del 15 de julio de 1992, **92 J.T.S. 109**, pág. 9869; *Pueblo v. Rivero. Lugo y Almodovar*, 121 D.P.R. 454, 473 (1988); *Pueblo v. Carrasquillo*, supra, a las páginas 551, 552; *Pueblo v. Cabán Torres*, supra a la pág. 655." (Bastardillas en el original.)

Allí mismo reiteramos lo resuelto en *Pueblo v. Cabán Torres*, 117 D.P.R. 645, 653 (1986), con respecto a que, una determinación – realizada a nivel de instancia – sobre si la culpabilidad de un acusado ha quedado establecida más allá de duda razonable, es un asunto revisable por un tribunal apelativo, como cuestión de derecho. Sobre el particular, en *Pueblo v. Carrasquillo*, 102 D.P.R. 545, 552 (1974) expresamos que:

"*[n]o cumpliríamos con nuestro deber si estando plenamente convencidos de que la prueba en determinado caso no establece la culpabilidad más allá de duda razonable, permitiéramos que prevaleciera una sentencia condenatoria. Cuando ello ocurre no se trata de una intervención con la función del juez o del jurado en la apreciación de la prueba, sino de un error de derecho. Pueblo v. Serrano Nieves, 93 D.P.R. 56, 60 (1966).*" (Bastardillas en el original.)

Examinados los principios normativos expuestos, procedemos a aplicarlos al caso de marras.

III

En el caso de autos, al igual que en cualquier caso criminal, el Ministerio Público ha de probar la culpabilidad de la acusada mediante evidencia que establezca todos los elementos del delito más allá de duda razonable. En aras de evaluar si ello se logró en el presente caso, transcribiremos los testimonios vertidos en el juicio, según constan en la exposición narrativa de la prueba:

TESTIMONIO DE LA SEÑORA LISSETE VAZQUEZ LOPEZ, LA PERJUDICADA:

[Q]ue para el día 30 de noviembre de 1996 siendo aproximadamente las 8:45 de la noche ocurrió un accidente en la que se vieron envueltos tres (3) vehículos de motor, resultando los tres vehículo de motor con daños. Que dichos vehículos fueron los siguientes: un Volvo conducido por la señora Rosa Feliciano Rodríguez (la Acusada), el vehículo de motor marca Nissan-Sentra conducido por la alegada perjudicada y el vehículo de motor guagua F-100, ésta [sic] color claro, cajón abierto. Que la alegada perjudicada estaba frente a dicha guagua y que la acusada estaba detrás del vehículo de la alegada perjudicada. Que el vehículo de la alegada perjudicada iba en dirección de Este a Oeste por la Calle Victoria de Ponce, al igual que los demás vehículos; que la guagua redujo la velocidad y la alegada perjudicada también, pero que simultáneamente la perjudicada estaba mirando por el retrovisor y que vio al vehículo de la acusada conducir a exceso de velocidad, impactándole su vehículo de motor y a su vez la alegada perjudicada impactó la guagua que estaba frente a su vehículo, causándose daños el vehículo de la alegada perjudicada por la parte trasera y la parte del frente, rompiéndose en la parte delantera los focos, "grill", bonete, y por la parte de atrás el muffler quemado; que ha tenido que amarrar con cadena el bonete delantero ya que cuando viaja a San Juan tiene que amarrarlo por la velocidad que va conduciendo. También testificó que el vehículo de motor que estaba frente a su vehículo, o sea, la guagua, también resultó bastante afectada por la parte de atrás ya que la alegada perjudicada la impactó. Indicó que el conductor de dicha guagua abandonó el área antes de llegar la Policía y no pudo tomársele la tablilla ni ningún tipo de información; que la Policía llegó como a la hora después del accidente, siendo el oficial el Agente Pablo De Jesús Borrero; que cuando llegó dicho Agente, previamente había llegado su ex-esposo el Policía "Amilca", quien trabaja en la Comandancia de Ponce; a preguntas del Abogado Defensor, expresó que no tenía licencia para conducir vehículo de motor y el sello de inspección de su vehículo estaba vencido; que el Policía tuvo conocimiento de ese hecho el día del accidente, pero no le expidió boleto o denuncia por ello. A preguntas del Abogado Defensor, dicha testigo informó que no sabía si frente a la guagua había otro vehículo de motor; testificó que en el área del accidente y frente a la guagua hay una calle que cruza la calle Victoria, que es la calle Miramar.

TESTIMONIO DEL POLICÍA PABLO DE JESÚS BORRERO:

[Q]ue está adscrito al Precinto 158 de la Calle Villa de Ponce; que lleva en la Policía siete años; que el accidente ocurrió aproximadamente a las 8:45 de la noche; que en el accidente estuvieron envueltos tres vehículos de motor que iban en

dirección de Este a Oeste por la Calle Victoria de Ponce, pero que el vehículo F-100, guagua, abandonó el lugar por no tener interés. A pregunta de la defensa, expresó el Policía que no vio dicho vehículo ni habló con el conductor ya que cuando él (el Policía) llegó dicho vehículo ya había abandonado el lugar del accidente. Que él (el Policía) asume que el conductor de la guagua no tenía interés. Que no investigó el conductor del vehículo que abandonó el lugar porque no tenía los datos de la tablilla del mismo. Que denunció a la acusada por no guardar [la] distancia prudente; testificó que la base que utilizó para determinar la distancia fue cuando la señora Lissette Vázquez (la alegada perjudicada) le indicó que ella, o sea, la alegada perjudicada, detuvo su vehículo de motor cuando estaba frente a la guagua; que por eso imputa negligencia a la acusada. A preguntas del Abogado Defensor, testificó que no sabe si había patinaje de gomas de vehículo de motor e indicó que no es Perito en tránsito; también testificó que en el lugar de los hechos se encontraba el Policía "Amilca" y que "Amilca" llegó antes que él; que fue él el que hizo la investigación y no "Amilca". Testificó que cerca del área del accidente hay una calle que cruza la calle Victoria por donde bajan vehículos de motor, pero al momento de los hechos desconoce si discurrían vehículos de motor debido ya [sic] que no hizo esa investigación; que no recuerda si en el lugar de accidente había negocios abiertos; que en dicha área hay muchos negocios; que no fue a preguntar a ninguna de las personas que estaban por allí. Que no sabe cómo estaba el "Debris"; que el vehículo de la perjudicada tenía un impacto fuerte en la parte delantera y tenía impacto en la parte posterior, y el vehículo de la acusada tenía un impacto en la parte delantera. A preguntas del Abogado Defensor, el Policía testificó que la alegada perjudicada no tenía licencia de conducir y que el vehículo de Motor, de la alegada perjudicada, no tenía el sello de inspección al día, y que no la denunció. El abogado defensor pregunta al Policía el por qué no denunció a la perjudicada, y el Hon. Juez Ramón Luis Pola interviene y expresa que si la perjudicada no tenía la licencia y el vehículo de motor no estaba inspeccionado, el Policía le dio la oportunidad, indicando también el Hon. Juez que eso es discreción del Policía. Luego de presentada la prueba por parte del Ministerio Público, el abogado defensor solicitó la absolución perentoria, fundamentando que para este tipo de delito es esencial probar la negligencia, la cual no fue probada por el Ministerio Público. El Hon. Tribunal de Primera Instancia declaró la misma no ha lugar.

TESTIMONIO DE LA SEÑORA ROSA FELICIANO ROGRÍGUEZ, LA ACUSADA:

[Q]ue tiene licencia de conducir vehículo de motor hace cuatro años. Que transitaba por la calle Victoria de Ponce de Este a Oeste; que estaba detenida como uno [sic] siete (7) u ocho (8) pies

> de distancia frente al vehículo de motor de la alegada perjudicada; que ésta estaba detenida frente a una guagua Ford-100, y que frente a dicha guagua había un vehículo de motor que le estaba permitiendo el paso a unos vehículos de motor que bajaban por la calle Miramar, ésta que cruza la calle Victoria, para que dichos vehículos entraran a la Calle Victoria; que la guagua, que estaba entre el vehículo de motor de la alegada perjudicada y el del vehículo de motor que estaba permitiendo el paso a los vehículos que discurrían por la calle Miramar, repentinamente dio reversa e impactó el carro de la señora Lissette (la alegada perjudicada); así también la alegada perjudicada dio reversa; la acusada le tocó la bocina pero siempre impactó con el "bumper" al vehículo de motor de la acusada. Testificó que todo fue muy rápido. También testificó la acusada que detrás del vehículo de motor de la acusada habían más automóviles que estaban detenido [sic]; que su vehículo sufrió daños por el "grill" y unas micas, y nada más. Que el costo fue de $125.00; Que cuando llegó el Agente Pablo De Jesús Borrero le mostró la licencia de conducir vehículos de motor y demás licencias para que tomará [sic] los datos; la alegada perjudicada no le mostró la licencia ya que no tenía, al igual que el Policía sabía que el vehículo de motor de la alegada perjudicada no tenía al día el sello de inspección, no la denunció.[4]

Evidentemente, la prueba desfilada en el juicio abriga duda razonable sobre la culpabilidad de la peticionaria. Existen dos versiones contrapuestas sobre la manera en que ocurrieron los hechos. Según la perjudicada, el accidente lo ocasionó la peticionaria al conducir a exceso de velocidad e impactar la parte trasera del vehículo de la perjudicada, lo que causó que ésta, a su vez, impactara la camioneta de tercero. No obstante, la versión de la peticionaria es que el conductor de la camioneta dio marcha atrás[5] e impactó el vehículo de la perjudicada, quien a su vez retrocedió e impactó el de la peticionaria. ¿Cuál de estas versiones es la cierta? No lo sabemos. Teóricamente, ambas son posibles.

---

[4] Apéndice, págs. 13-17.

[5] Según la peticionaria, frente a la camioneta de tercero había un vehículo dándole paso a otros automóviles que transitaban por la calle Miramar, en vías de entrar a la calle Victoria.

Nos resta evaluar los daños que sufrieron los vehículos envueltos en el accidente. De la prueba presentada surge que la camioneta guiada por un tercero resultó "bastante afectada" por la parte trasera; el vehículo de la perjudicada sufrió un daño sustancial por la parte delantera, pero en la parte trasera, sólo sufrió daños en el "muffler"; el vehículo de la peticionaria sufrió daños menores en la parrilla delantera. Dicha prueba más bien respalda la teoría de la peticionaria de que el golpe inicial lo originó la camioneta. De lo contrario, debemos preguntarnos ¿por qué el tercero abandonó el lugar antes de que llegara la policía, si su camioneta sufrió daños?

Ante tales interrogantes, concluimos que el Ministerio Público no presentó evidencia clara y convincente de que la teoría de la perjudicada debía prevalecer. Se limitó a presentar los testimonios de la perjudicada y del policía De Jesús Borrero. Además, el agente De Jesús Borrero no es perito en tránsito; basó la alegada negligencia de la peticionaria únicamente en las manifestaciones que le hizo la perjudicada; no investigó si hubo patinaje de gomas; no sabía cómo estaba el "debris"; desconocía si al momento de los hechos bajaban vehículos de motor por la calle Miramar, atravesando la calle Victoria; no recordaba si en el lugar de los hechos había negocios abiertos; tampoco interrogó a ninguna de las personas que estaban en el área.

A nuestro juicio, su investigación fue deficiente. La función investigativa de un agente policíaco es vital para el esclarecimiento de un caso. Así, pues, el policía que tenga a cargo la investigación de un accidente de tránsito, ha de acudir al lugar de los hechos y realizar un estudio detallado de cómo sucedieron los hechos. No meramente basarse en el testimonio de una de las partes envueltas, habida cuenta de que cada cual tiende a testificar a su favor.

Cabe indicar que, aún cuando al momento del accidente la perjudicada no tenía licencia de conducir y el sello de inspección de su vehículo estaba vencido, el policía De Jesús Borrero no la denunció. Aún más, se desprende de la exposición narrativa de la prueba que el policía "Amilca" – ex esposo de la perjudicada y compañero del agente De Jesús Borrero –, estuvo presente en la investigación, a requerimiento de la perjudicada.[6] Tales circunstancias, además de la forma inadecuada en que el policía De Jesús Borrero condujo la investigación, demuestran que su testimonio en el presente caso estuvo parcializado.

Es preciso recalcar que nuestro ordenamiento jurídico no le exige a un(a) acusado(a) que pruebe su inocencia más allá de duda razonable. Todo lo contrario, le requiere al Ministerio Público probar la culpabilidad más allá de duda razonable.

Surge en nuestro ánimo, que en el presente caso, la prueba presentada por el Ministerio Público no logró su propósito. Por tal razón, es nuestro deber revocar el dictamen del tribunal apelativo y, por ende, el del tribunal de instancia, dejando sin efecto la convicción de la peticionaria, por alegada violación a la sección 5-201 de la Ley de Vehículos y Tránsito de Puerto Rico, *supra*.

Después de todo, y a tenor de la doctrina *in dubio pro reo*, debe prevalecer la impunidad de un culpable a la condena de un inocente. *Pueblo v. Cruz Granados, supra*.

Expedido previamente el auto de certiorari, revocamos el dictamen del Tribunal de Circuito de Apelaciones a los fines de dejar sin efecto la convicción de la peticionaria, por existir duda razonable.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López

---

[6] Apéndice, pág. 14.

disiente con opinión escrita. El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

disiente con opinión escrita. El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

**El Pueblo de Puerto Rico**

    **Recurrido**

      **v.**                                        **CC-98-551**

                                     **CERTIORARI**

**Rosa Feliciano Rodríguez**

    **Acusada-peticionaria**

**OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ**

San Juan, Puerto Rico, a 29 de febrero de 2000

**Aun cuando, desde un punto de vista puramente personal, nos resulta un tanto antipático tener que disentir de la decisión que emite en el presente caso una mayoría de los integrantes del Tribunal, <u>realmente no podemos hacer otra cosa</u>. A nuestro juicio, suscribir la decisión mayoritaria emitida en el caso que hoy ocupa nuestra atención representaría prestar nuestro consentimiento a la destrucción total del andamiaje sobre el cual descansa, desde su incepción, el sistema de justicia criminal en nuestra jurisdicción.**

**<u>No</u> estamos exagerando; ojalá que así fuera. Un análisis detenido y responsable de la Sentencia**

mayoritaria emitida demuestra que la misma valida un razonamiento decisorio que irremediablemente afecta no solo la correcta solución de los casos criminales que a diario se dilucidan a nivel del tribunal de primera instancia sino que el mismo da al traste con el proceso de revisión judicial de los fallos judiciales que se emiten en dichos casos.

Razona la mayoría de los integrantes del Tribunal que en el presente caso resulta procedente intervenir con la apreciación que de la prueba presentada durante el proceso celebrado hiciera el tribunal de instancia meramente por razón de que: durante el proceso celebrado se brindaron "dos versiones contrapuestas sobre la manera en que ocurrieron los hechos" y que, como no sabemos cuáles de esas dos posibles versiones es la cierta, existe duda razonable sobre la culpabilidad de la acusada. En consecuencia, la Mayoría revoca el fallo condenatorio que, a base de la credibilidad que le merecieran los testigos, emitiera el tribunal de instancia.

Cualquier persona que haya practicado la profesión de abogado, tanto en el campo de la litigación civil o criminal, sabe que, como regla general, en los procesos judiciales los jueces que presiden los mismos se enfrentan a dos versiones, contradictorias entre sí, teniendo que decidir éstos cuál de estas dos versiones es la más creíble; esto es, dichos magistrados tienen que, continuamente y como parte inherente de su función judicial, adjudicar credibilidad.

No existe, naturalmente, una forma científica o matemática que facilite esa adjudicación de credibilidad; aparte de escuchar y observar detenidamente a los testigos, esto es, sus gestos, reacciones y comportamiento, realmente es una cuestión, o mezcla, de buen juicio, sentido común e, incluso, de intuición. Ello no obstante, y en vista del hecho innegable de que los jueces a nivel de instancia son los que oyeron y vieron declarar a los testigos, los jueces a nivel apelativo establecieron, desde tiempo inmemorial, la _sabia_ norma de que _no_ intervendrán con la apreciación que de la prueba testifical haya hecho

el juez de instancia a menos que la parte que así lo solicite demuestre que el juez de instancia actuó movido por prejuicio y parcialidad o que éste incurrió en error manifiesto al dirimir la credibilidad de los testigos. <u>Pueblo</u> v. <u>Cabán Torres</u>, 117 D.P.R. 641 (1986).

<u>¿Cumplió con el presente caso la acusada peticionaria con esa obligación?</u> La mayoría de los integrantes del Tribunal, <u>al intentar contestar dicha interrogante</u>, nos señala que el tercer vehículo envuelto en el accidente-- el primero en la cadena de tres vehículos envueltos en el choque-- sufrió mayores daños en la parte trasera que en la frontal y, a su vez, se cuestiona el "¿por qué el tercero abandonó el lugar antes de que llegara la policía, si su camioneta sufrió daños? Contesta la Mayoría que ese hecho  --el abandono de la escena del accidente-- "respalda la teoría de la peticionaria de que el golpe inicial" lo ocasionó dicho tercer vehículo.

Dicho razonamiento, o fundamento para la absolución, es tan débil que, realmente, el mismo no merece ser refutado. Pero, por aquello de que "el que calla otorga", se no ocurre pensar que el conductor de dicho tercer vehículo pudo tener varias razones para abandonar la escena  del accidente, todas ellas ajenas al razonamiento de la Mayoría, a saber: dicho conductor tenía que llevar a algún familiar al hospital; no estaba autorizado para conducir un vehículo de motor, razón por la cual no interesaba esperar por la Policía de Puerto Rico; era un prófugo de la justicia; es una persona de medios económicos que cuenta con un seguro que le cubre los daños sufridos, o, sencillamente, no le interesaba reclamar de otro los daños por él sufridos; era un hombre casado que se encontraba acompañado por una dama que no era su esposa; etc.

En resumen, mediante la decisión mayoritaria que hoy se emite ha pasado a mejor vida la trillada norma de abstención judicial a los efectos de que un tribunal apelativo deberá abstenerse de intervenir con las determinaciones y/o apreciación de la prueba que haga el juez de instancia; ello en ausencia de demostración de pasión, prejuicio,

parcialidad y/o de una clara y arbitraria actuación errónea de parte del tribunal de instancia. <u>Pueblo</u> v. <u>Cabán Torres</u>, ante.

Peor aun, si es que ello es posible, de hoy en adelante los jueces de instancia contarán con un nuevo "test", o criterio, para resolver los casos criminales, cual es: existe duda razonable siempre que haya dos versiones contradictorias, en cuya situación procede la absolución del imputado de delito. Debemos confesar que este Tribunal no deja de sorprendernos.


                        FRANCISCO REBOLLO LOPEZ
                              Juez Asociado