Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| **EL PUEBLO DE PUERTO RICO**<br><br>Parte Apelada<br><br><br>v.<br><br><br>**JAVIER NAVARRO TORRES**<br><br>Parte Apelante | KLAN202300339 | **APELACION**<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo Sala 308<br><br>Casos Núm.:<br>**NSCR201700514**<br>**NSCR201700515**<br>**NSCR201700516**<br>**NSCR201700517**<br><br>Sobre:<br>**Art. 93 A CP (1er. Grado) (2012); Art. 5.04 Ley 404 (2000) Grave (2cs); Art. 5.15 Ley 404 (2000) Grave** |

Panel integrado por su presidente el juez Bermúdez Torres, la Jueza Romero García y el Juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de agosto de 2024.

Comparece ante nos, Javier Navarro Torres, en adelante, Navarro Torres o apelante, solicitando que revoquemos la determinación de culpabilidad emitida en su contra y la *"Sentencia"* dictada por el Tribunal de Primera Instancia, Sala de Fajardo, TPI-Fajardo, emitida el 20 de marzo de 2023.

Por los fundamentos que expondremos a continuación, *confirmamos la sentencia apelada.*

**I.**

Por eventos acaecidos el 4 de abril de 2015, que culminaron en la muerte de Carlos Castro Romero, en adelante, Castro Romero o víctima, se presentaron sendas denuncias en contra de Navarro

---

[1] Véase Orden Administrativa OATA-2023-131 del 14 de julio de 2023, donde se designa al Juez Alberto Luis Pérez Ocasio en sustitución del juez José J. Monge Gómez.

Torres, Brian Filomeno Delgado, en adelante, Filomeno Delgado, y Erick Navarro Ramos, en adelante, Navarro Ramos.[2] Los coacusados enfrentaron un (1) cargo por violación al Artículo 93(a) del Código Penal;[3] dos (2) cargos por violación al Artículo 5.04 de la Ley de Armas;[4] un (1) cargo por violación al Artículo 181 del Código Penal;[5] y un (1) cargo por violación al Artículo 244 del Código Penal.[6]

Con relación al apelante, el 30 de marzo de 2017 se encontró causa para arrestar a Navarro Torres. Por ello, el 27 de agosto de 2017, el TPI-Fajardo encontró causa para acusar al apelante en la Vista Preliminar, por lo que el Ministerio Público presentó las acusaciones correspondientes.

Los juicios de los coacusados en el caso de marras fueron divididos. El juicio de Navarro Torres fue por jurado, y celebrado entre los días 13 de abril de 2018 al 13 de octubre de 2022. A continuación, ofrecemos un resumen de los testimonios vertidos en el juicio que nos ocupa, y que hemos examinado con detenimiento:

**Agente González Díaz, del CIC-Fajardo.**

El agente es un experto en manejo de escena, y acudió a una el 5 de abril de 2015, en respuesta a una llamada, en la cual alegaron había una persona muerta en la Carretera 970 de Rio Grande. Testificó que el Agente García Casillas estuvo a cargo de la investigación. Explicó que en la escena del crimen tomó fotos y recogió casquillos de bala, las cuales fueron enviadas al Instituto de Ciencias Forenses.

---

[2] Los hechos esbozados en la primera parte de esta sentencia son extraídos de los autos originales que obran en nuestro expediente, los cuales recibimos el día 25 de septiembre de 2023.

[3] Asesinato en primer grado, Artículo 93(a) del Código Penal de Puerto Rico, Ley Núm. 146 de 30 de Julio de 2012, 33 LPRA sec. 5142.

[4] Uso, portación o transportación de armas de fuego sin licencia, Artículo 5.04 de la "Ley de Armas de Puerto Rico de 2020, Ley Núm. 168 de 11 de diciembre de 2019, 25 LPRA § 465c.

[5] Apropiación ilegal, Artículo 181 del Código Penal de Puerto Rico, Ley Núm. 146 de 30 de Julio de 2012, 33 LPRA sec. 5251.

[6] Conspiración, Artículo 244 del Código Penal de Puerto Rico, Ley Núm. 146 de 30 de Julio de 2012, 33 LPRA sec. 5334.

**Teniente Báez Ramos, Policía Municipal de Río Grande.**

Testificó que, mientras disfrutaba de un día libre, se le acercó un ciudadano en una gasolinera y le informó del asesinato en cuestión. Alega que, por no haber personal en el cuartel policiaco del municipio, fue al lugar que le indicaron y encontró el cuerpo sin vida de la víctima. Luego de esto, explicó que llamó a Manejo de Emergencias, y estos llegaron con la Policía.

**Agente García Casillas, Policía Estatal de Rio Grande.**

Estando trabajando en una ronda preventiva, recibió una llamada en la que le indicaron que el Teniente Báez Ramos encontró un cuerpo sin vida. Testificó que se presentó a la escena del crimen, y vio el cadáver de la víctima, boca abajo. Indicó, además, que luego llegó el equipo de Servicios Técnicos.

**Agente Ramos Méndez, División de Drogas (CIC-Fajardo).**

Testificó que se le instruyó cooperar con un operativo en el sector Galateo del Municipio de Rio Grande. Indicó que cuando se personó allí, observó a un individuo con un arma de fuego en la cintura. Alegó que le indicó al individuo que se detuviera, y este intentó huir. Eventualmente, el agente arrestó al sujeto, quien resultó ser Filomeno Delgado. Finalmente, expresó que las armas incautadas ese día, fueron enviadas al Instituto de Ciencias Forenses.

**Henry Hernández**

Este testigo tenía dieciséis (16) años al momento en que ocurrieron los hechos del caso de epígrafe. Sin embargo, a la fecha del juicio, tenía veintitrés (23) años. Durante su testimonio, identificó a Navarro Torres como el jefe del "punto" del sector Galateo en Rio Grande, en donde vendía drogas. Alegó que, en el mismo, el apelante daba órdenes. Indicó que Navarro Ramos *es hijo del apelante*, y que Filomeno Delgado *es hijastro de Navarro Torres*. En su testimonio, Henry Hernández describió los hechos, según los

vivió, el día 5 de abril de 2017. Narró que, durante el día, Filomeno Delgado llamó a Castro Romero para indicarle que llegara al hogar de Navarro Ramos, ya que matarían a un sujeto de apodo "Nacho". Henry Hernández explicó que este individuo era el jefe de otro "punto" de drogas, que estaba en "guerra" con el de ellos. Más adelante, los coacusados de este caso, la víctima y Henry Hernández se montaron en el vehículo de motor de Castro Romero, la cual describió como una Jeep negra de cuatro puertas. Luego de una serie de eventos, Henry Hernández testificó que Filomeno Delgado le disparó a la víctima, estando detrás de ella, y lo mató. Narró que una vez cayó al suelo, Navarro Ramos le quitó unas pertenencias de los bolsillos a Castro Romero, incluyendo las llaves de la Jeep negra en la que llegaron al lugar donde sucedieron los hechos, y una sortija. Contó, además, que cuestionó por qué habían matado a la víctima, cuando se supone que asesinarían a "Nacho". Alegó el testigo que estos le indicaron que Castro Romero estaba trabajando con los enemigos de ellos. Luego, se montaron en la Jeep negra los dos coacusados y el testigo, y en el camino, alegó que Navarro Ramos hizo una llamada, en la que anunció que habían terminado "el trabajo". Más adelante, se reunieron con el apelante. En aquel lugar se bajaron todos de la Jeep negra, y del auto en el que estaba el apelante, se bajó este y dos personas adicionales. Todos se quedaron allí, excepto Navarro Ramos y Navarro Torres, quienes intercambiaron de autos y se fueron. Alega Henry Hernández que unos minutos más tarde, regresaron ambos en el auto del apelante. Luego, se fueron todos en el vehículo de Navarro Torres, y llegaron a una casa de empeño, en la que el apelante empeño la sortija de la víctima, y se quedó con el dinero.

**Agente Alejandro Velázquez, División Homicidio CIC-Fajardo**

Testificó que al lugar de los hechos se personaron familiares

de la víctima, quienes lo identificaron como Castro Romero. Además, indicó que entrevistó al testigo Henry Hernández, luego de que este fuera arrestado por una violación a la Ley de Armas de Puerto Rico de 2020, *supra*. En síntesis, el agente, al testificar sobre la entrevista que le realizó a Henry Hernández, recapituló el testimonio de este último. Por otro lado, y partiendo de la entrevista hecha a Henry Hernández, el agente acudió a la División de Drogas del CIC-Fajardo, para corroborar si las armas de fuegos incautadas en el arresto de Filomeno Delgado eran las mismas que se habían utilizado para el asesinato de Castro Romero. Indicó que así lo pudo comprobar, mediante un análisis comparativo entre las armas de fuego en cuestión y los casquillos de bala recogidos en la escena del crimen, y los fragmentos recuperados del cuerpo de la víctima.

Para la controversia que nos ocupa, es importante destacar que durante el juicio se celebraron tres (3) vistas al amparo de la Regla 109(A) de las Reglas de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 109.

La primera de estas versó sobre el testimonio del Teniente Báez Ramos. El apelante objetó la pertinencia del Exhibit 8, el cual contaba con el análisis del arma de fuego con la que se le causó la muerte a Báez Ramos. Alegó que nunca portó esas armas de fuego, y que admitir el documento, y el testimonio del Teniente respecto a esto, le causaría un perjuicio indebido al acusado. Sin embargo, el Foro Apelado permitió el testimonio del Teniente.

Por otro lado, y en cuanto al testimonio del Agente Alejandro Velázquez, Navarro Torres cuestionó la admisibilidad y pertinencia de la prueba sobre las advertencias de ley que se le realizaron a Henry Hernández. Alegó que esto pudiera causar confusión en el Jurado. Aun así, el Foro Primario permitió el desfile de esta prueba. Sin embargo, con relación al testimonio del agente, el TPI-Fajardo

no permitió que este contestara preguntas referentes a la operación del "punto" de droga.

Por último, con relación al testimonio de Henry Hernández, el Foro Apelado, ante las objeciones de la defensa, delimitó las preguntas que el Ministerio Público podría hacerle sobre su involucramiento en el "punto" de droga en el que trabajaba. La defensa también objetó que Henry Hernández hablara de la relación familiar entre los coacusados. No obstante, el TPI-Fajardo las permitió.

Finalmente, en su último día de juicio, el apelante fue encontrado culpable por todos los cargos. Así las cosas, el 20 de marzo de 2023, se dictó *"Sentencia"* en el caso de autos, imponiéndole a Navarro Torres una pena de 115 años y 6 meses de reclusión.

En consecuencia, el 18 de abril de 2023, este Tribunal recibió un *"Escrito Inicial de Apelación"* por parte del apelante, en el que hizo los siguientes señalamientos de error:

**PRIMER ERROR**: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ENCONTRAR CULPABLE AL APELANTE DE TODOS LOS CARGOS PRESENTADOS, SIN EL MINISTERIO PÚBLICO HABER ESTABLECIDO MÁS ALLÁ DE TODA DUDA RAZONABLE LA CONEXIÓN ENTRE EL SR. JAVIER NAVARRO TORRES (ACUSADO), Y LA PRUEBA PRESENTADA.

**SEGUNDO ERROR**: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL ENCONTRAR CULPABLE AL APELANTE, A PESAR DE QUE HUBO AUSENCIA TOTAL DE PRUEBA EN EL JUICIO QUE DEMOSTRARA LA AUTORÍA EN LA COMISIÓN DEL DELITO DEL SR. JAVIER NAVARRO TORRES, MÁS ALLA DE TODA DUDA RAZONABLE.

**TERCER ERROR**: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL PERMITIR QUE LUEGO DE HABER REALIZADO UNA DETERMINACIÓN AL AMPARO DE LA REGLA 109 DE LAS REGLAS DE EVIDENCIA DE PUERTO RICO, EL MINISTERIO PÚBLICO LE HICIERA PREGUNTAS A VARIOS TESTIGOS EN VIOLACIÓN A LA REGLA 402 DE LAS REGLAS DE EVIDENCIA DE PUERTO RICO,

EXPONIENDO AL JURADO A INFORMACIÓN NO PERTINENTE AL CASO DE AUTOS, CAUSÁNDOLES DESORIENTACIÓN.

**CUARTO ERROR**: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL PERMITIR QUE LUEGO DE HABER REALIZADO UNA DETERMINACIÓN AL AMPARO DE LA REGLA 109 DE LAS REGLAS DE EVIDENCIA DE PUERTO RICO, EL MINISTERIO PÚBLICO LE HICIERA PREGUNTAS A VARIOS TESTIGOS EN VIOLACIÓN A LA REGLA 403 DE LAS REGLAS DE EVIDENCIA DE PUERTO RICO, CAUSÁNDOLE UN RIESGO DE PERJUICIO INDEBIDO AL ACUSADO.

Por ello, mediante *"Resolución"* del 21 de abril de 2023, esta Curia ordenó los procesos de rigor para que se estregaran las regrabaciones de los procedimientos en el Foro Primario, y se estipulara la transcripción de la prueba oral. Además, indicamos que la parte apelante debería presentar su alegato en un plazo de treinta (30) días a partir de sometida la transcripción, conforme a las Reglas 29 y 76(B) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 29 y 76(B).

Luego de varios eventos procesales, Navarro Torres presentó una *"Moción Sometiendo la Transcripción de la Prueba Oral Estipulada por las Partes"*, el 5 de julio de 2023. Luego, el 4 de agosto de 2023, Navarro Torres presentó el *"Alegato del Apelante"*. En consecución, mediante *"Resolución"* del 17 de agosto de 2023, le concedimos a la parte apelada hasta el 4 de septiembre de 2023 para presentar su escrito en oposición. Así las cosas, luego de una solicitud de término adicional, la cual concedimos, el 8 de septiembre de 2023, el Procurador General de Puerto Rico presentó su *"Alegato de[l] Pueblo"*.

Con el beneficio de la comparecencia de ambas partes, sus alegatos, la evaluación de los autos originales y la transcripción de la prueba oral estipulada, entendemos perfeccionado este recurso

de apelación. A continuación, esbozaremos la normativa y el estado de derecho que enmarca la controversia que aquí nos ocupa.

## II.

### A. Revisión Judicial

Cuando un acusado es encontrado culpable más allá de toda duda razonable, tiene el derecho a apelar su sentencia, como cuestión de derecho. Ahora bien, la apreciación de la prueba desfilada es un asunto tanto de hecho como de derecho. *Pueblo v. Negrón Ramírez,* 2024 TSPR 41, 213 DPR ___ (2024); *Pueblo v. Irizarry,* 156 DPR 780, 788 (2002). Además, como regla general, los foros apelativos no estamos en posición para sustituir determinaciones del tribunal de primera instancia con nuestras propias apreciaciones. *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013); *Serrano Muñoz v. Auxilio Mutuo,* 171 DPR 717, 741 (2007). En consecución, este Tribunal no debe intervenir indebidamente con las determinaciones de la prueba y la credibilidad otorgada a los testigos. *Pueblo v. Negrón Ramírez,* supra; *Pueblo v. Toro Martínez,* 200 DPR 834, 858 (2018).

Es un principio cardinal en el ámbito jurídico penal, que, al revisar cuestiones relativas a convicciones criminales, la apreciación de la prueba le corresponde, en primera instancia, al foro sentenciador. *Pueblo v. Santiago et al.,* 176 DPR 133, 147-148 (2009). Bien analiza esta máxima nuestro Tribunal Supremo al expresar que "el foro primario cuenta solamente con récords mudos e inexpresivos". *Trinidad v. Chade,* 153 DPR 280, 291 (2001). Véase, además, *SLG Rivera Carrasquillo v. A.A.A.,* 177 DPR 345, 356 (2009). Tal deferencia se fundamenta en que:

> es el juez sentenciador, ante quien deponen los testigos, quien tiene la oportunidad de verlos y observar su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, manierismos, dudas, vacilaciones y, por

consiguiente, de ir formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad.

*Pueblo v. García Colón I,* 182 DPR 129, 165 (2011), citando a *Argüello v. Argüello,* 155 DPR 62, 78 (2001).

Por otro lado, en un caso más antiguo, nuestro Alto Foro hizo unas expresiones más vívidas e ilustrativas sobre el espíritu detrás de la deferencia concedida a la ventaja física que ostenta el Foro Primario en su apreciación de la prueba:

[N]o sólo habla la voz viva. También hablan las expresiones mímicas: ***el color de las mejillas, los ojos, el temblor o consistencia de la voz, los movimientos, el vocabulario no habitual del testigo,*** son otras tantas circunstancias que deben acompañar el conjunto de una declaración testifical y sin embargo, ***todos estos elementos se pierden en la letra muda de las actas***, por lo que se priva al Juez de otras tantas circunstancias que han de valer incluso más que el texto de la declaración misma para el juicio valorativo que ha de emitir en el momento de fallar; le faltará el ***instrumento más útil*** para la investigación de la verdad: ***la observación***.

*Ortiz v. Cruz Pabón,* 103 DPR 939, 947 (1975).
(Énfasis nuestro).

Por tanto, "[a]l evaluar si se probó la culpabilidad de un acusado más allá de duda razonable, los foros apelativos no debemos hacer abstracción de la ineludible realidad de que los jueces del tribunal de primera instancia y los jurados están en mejor posición de apreciar y aquilatar la prueba y los testimonios presentados". *Pueblo v. Casillas, Torres,* 190 DPR 398, 416 (2014). Véase, además, *Pueblo v. Acevedo Estrada,* 150 DPR 84, 99 (2000). *Pueblo v. Negrón Ramírez,* supra.

Ahora bien, esta norma no es absoluta ni está huérfana de excepción. Una sentencia de culpabilidad debe ser revocada, si se demuestra que hubo pasión, perjuicio, parcialidad o error manifiesto en la evaluación de la prueba realizada por el juzgador de los hechos. Además, si luego del análisis de los casos ante nos,

encontramos que la prueba no justifica el resultado, o que la prueba no concuerda con la realidad fáctica, por ser esta increíble o imposible, procede nuestra intervención y posible revocación. *Pueblo v. Casillas, Torres*, supra, *Pueblo v. Santiago et al.,* supra, pág. 148. Cabe señalar que, "el marco de acción limitado, a nivel apelativo, con respecto a la apreciación de la prueba, no implica que el foro recurrido sea inmune a error; tampoco que, so color de deferencia [...], haremos caso omiso a los errores que se hayan cometido en el foro de instancia". *Pueblo v. Acevedo Estrada,* supra, pág. 100. De manera que el tribunal revisor revocará un fallo inculpatorio cuando el resultado de ese análisis deje serias dudas, razonables y fundadas, sobre la culpabilidad del acusado". *Pueblo v. Santiago et al.*, supra, pág. 148.

### B. Quantum probatorio: más allá de duda razonable

La Constitución del Estado Libre Asociado de Puerto Rico consagra en su Artículo II, Sección 11, la presunción de inocencia a todo individuo que esté acusado de un delito. Por ello, el Estado viene obligado a rebatir la presunción, y establecer su culpabilidad. *Pueblo v. Irizarry,* supra, pág. 786-787; *Pueblo v. González Román,* 138 DPR 691, 707 (1995); *Pueblo v. Rosaly Soto,* 128 DPR 729, a la pág. 739 (1991); Regla 110 de las Reglas de Procedimiento Criminal, 34 LPRA Ap. II, R. 110.

Esta responsabilidad del Estado debe consumarse dentro del estándar evidenciario de ***más allá de duda razonable.*** Los elementos del delito imputado, así como la conexión del acusado con los hechos delictivos deben establecerse para cumplir con este quantum probatorio. *Pueblo v. Nieves Cabán,* 201 DPR 853, 878 (2019); *Pueblo v. Santiago et al.,* supra, pág. 142; *Pueblo v. Irizarry, supra,* pág. 787; *Pueblo v. Acevedo Estrada,* supra, pág. 99. Aclaramos que lo previo no implica que deba destruirse toda duda

posible, sea especulativa o imaginaria, ni que la culpabilidad del acusado tenga que establecerse con certeza matemática. *Pueblo v. Feliciano,* 150 DPR 443, 447 (2000); *Pueblo v. Rosario Reyes,* 138 DPR 591, 598 (1995); *Pueblo v. Pagán, Ortiz,* 130 DPR 470, 480 (1992); *Pueblo v. Bigío Pastrana,* 116 DPR 748, 761 (1985).

En resumidas cuentas, la duda razonable es aquella duda fundada que surge como producto de la consideración justa e imparcial de la totalidad de la evidencia o de la falta de prueba suficiente, por lo que "[n]o es una duda especulativa, imaginaria o cualquier duda posible". *Pueblo v. Cruz Granados,* 116 DPR 3, 21 (1984).

### C. Prueba circunstancial

Es un harto conocido y entendido jurídico que el ánimo criminal detrás de una actuación, por ser subjetivo, se prueba mediante las circunstancias relacionadas con el delito, que conforman los elementos del mismo. *Pueblo v. Negrón Ramírez,* supra; *Pueblo v. Santiago et al.,* supra, pág. 142; *Pueblo v. Acevedo Estrada,* supra, pág. 99; *Pueblo en el interés del menor F.S.C.,* 128 DPR 931, 941 (1992).; *Pueblo v. Miranda,* 177 DPR 188, 194 (1986); *Pueblo v. De León,* 102 DPR 446, 449 (1974). La misma es juzgada por "los hechos pertinentes anteriores, concomitantes y posteriores del caso." *Pueblo v. McCloskey,* 164 DPR 90, 96 (2005).

Nuestro ordenamiento jurídico reconoce la existencia y la diferencia entre *evidencia directa y circunstancial.* A esos efectos, la Regla 110 de las Reglas de Evidencia de Puerto Rico, supra, dispone lo siguiente:

> La juzgadora o el juzgador de hechos deberá evaluar la evidencia presentada con el propósito de determinar cuáles hechos han quedado establecidos o demostrados, con sujeción a los principios siguientes:
> [...]

(h) Cualquier hecho en controversia es susceptible de ser demostrado mediante evidencia directa o *mediante evidencia indirecta o circunstancial.* Evidencia directa es aquella que prueba el hecho en controversia sin que medie inferencia o presunción alguna y que, de ser cierta, demuestra el hecho de modo concluyente. Evidencia indirecta o circunstancial es aquella que tiende a demostrar el hecho en controversia probando otro distinto, del cual por si o, en unión a otros hechos ya establecidos, puede razonablemente inferirse el hecho en controversia

(Énfasis suplido).

Así pues, se ha establecido que la característica fundamental de la prueba circunstancial es que, aunque fuera creída, no es suficiente para probar el hecho que aspira probar. *Admor. F.S.E. v. Almacén Ramón Rosa,* 151 DPR 711, 719 (2000). Por ello, la evidencia circunstancial que sirva como fundamento para establecer un hecho, debe ser producto de un ejercicio analítico de inferencias razonables que, junto a otra prueba, pueda satisfactoriamente llevar al juzgador a lo concluido. Id.; *Acarón et al. v. D.R.N.A.,* 186 DPR 564, 590 (2012); E. L. Chiesa, *Tratado de Derecho Probatorio: Reglas de Evidencia de Puerto Rico y Federales*, República Dominicana, Ed. Corripio, 1998, T. II, pág. 1239.

Es un principio cardinal que "la prueba circunstancial es intrínsecamente igual que la evidencia directa." *Pueblo v. Pagán, Ortiz,* supra, pág. 479; *Pueblo v. López Rodríguez,* 118 DPR 616 (1987). Por ello, en nuestro ordenamiento jurídico, un caso penal puede ser demostrado mediando solo prueba circunstancial. Véase, *Pueblo v. Areche Holdum,* 114 DPR 99, 107-108 (1983).

El Ministerio Público puede descansar totalmente en prueba circunstancial para probar la culpabilidad del acusado más allá de toda duda razonable. *Pueblo v. Gómez Nazario,* 121 DPR 66, 72 (1988). Esta norma aplica para todo tipo de delito, incluyendo aquellos cometidos en calidad de coautores. Lo indispensable es

que los elementos constitutivos del delito queden demostrados por las inferencias razonables basadas en el conjunto de hechos y circunstancias probadas. *Admor. F.S.E. v. Almacén Ramón Rosa,* supra, pág. 719; *Pueblo v. Pellot Pérez,* 121 DPR 791, 806 (1988); véase, además, a *Pueblo v. Soriano Rodríguez,* 92 DPR 46, 48 (1945).

Por su parte, el profesor Chiesa Aponte indica que la evidencia circunstancial "se trata de que las circunstancias apuntan en dirección favorable a la inferencia". E.L. Chiesa, *Tratado de Derecho Probatorio: Reglas de Evidencia de Puerto Rico y Federales*, op. cit., pág. 1239.

Específico al caso de marras, en *Pueblo v. Santiago et al,* supra, pág. 144, nuestro Alto Foro indicó que:

> [E]n los casos de coautoría existe un acuerdo de distribución de funciones entre las personas involucradas para cometer el delito. Además de participar en el acuerdo, el coautor tiene que haber *contribuido* de alguna manera a la producción de la ofensa, siendo suficiente que la contribución constituya un *eslabón importante* en el plan delictivo. Esta participación se puede establecer mediante *prueba directa o circunstancial.*

> (Énfasis suplido).

### D. Coautoría

Al definir quienes se considerarán responsables de la conducta delictiva, en el derogado Código Penal de 2004, Ley 149-2004, 33 LPRA ant. sec. 4629 et al., se "adoptó la teoría civilista de la diferenciación, bajo la cual se configuran dos posibles categorías de participación, los autores y los cooperadores". *Pueblo v. Santiago et al.*, supra, pág. 143. Respecto a la participación en una empresa criminal, en el Artículo 42 del Código Penal de 2004, supra, ant. sec. 4670, se definía como responsables de delito a los "autores y los cooperadores". En lo pertinente, el Artículo 43 del referido Código definía a los autores como:

(a) Los que toman parte directa en la comisión del delito.

(b) Los que fuerzan, provocan, instigan o inducen a otra persona a cometer el delito.

(c) Los que se valen de una persona inimputable para cometer el delito.

(d) Los que cooperan con actos anteriores, simultáneos o posteriores a la comisión del delito, sin cuya participación no hubiera podido realizarse el hecho delictivo.

[...]

Código Penal de 2004, supra, ant sec. 4671.

Aclaró nuestro Alto Foro que no era preciso que la persona acusada ejecutara personalmente el acto, sino que bastaría su presencia pasiva si pudiese probarse su responsabilidad como coautor "por actos anteriores, resultado de una conspiración o designio común", pues en casos de coautoría existiría 'un acuerdo de distribución de funciones' entre las personas involucradas en cometer el delito". *Pueblo v. Santiago et al.,* supra, pág. 144. Correctamente ponderó nuestro Alto Foro que esa participación podría probarse mediante prueba directa o circunstancial. También, decretó que la mera presencia de una persona durante la comisión de un delito no sería suficiente para sostener una convicción por coautoría, como tampoco se consideraría que es un coautor quien participa del crimen sin saberlo. Id. Una vez se demostrara la coautoría de un acusado más allá de duda razonable, se le imputaría responsabilidad a la persona a título de autor. Id.

Reconociendo la complejidad del tema de la cointervención en un delito, nuestro más Alto Foro efectuó un análisis abarcador al respecto en *Pueblo v. Sustache Sustache*, 176 DPR 250, 295-314 (2009). Al actuar la figura del autor, incluída en el Artículo 43 (d) del Código Penal de 2004, supra, y la figura del cooperador del Artículo 44, enfatizó que mientras ambas son formas de intervención en un delito, la primera es una forma de autoría, mientras la segunda un tipo de participación. *Pueblo v. Sustache Sustache,* supra, pág. 300.

Con relación a la coautoría del Artículo 43 (d) del Código Penal de 2004, supra, el Tribunal Supremo pronunció lo siguiente:

> Nuestra jurisprudencia ha limitado la aplicación del concepto de coautor *a aquellas personas que participan consciente e intencionalmente en la comisión de un delito.* Esto porque se requiere probar que los autores actuaron en concierto y común acuerdo, como parte de una conspiración o designio común. En otras palabras, se necesita establecer algún grado de consejo, incitación o participación directa o indirecta en el hecho punible.
>
> *Pueblo v. Sustache Sustache,* supra, pág. 301.
> (Énfasis suplido)

Razonó nuestro Máximo Foro que la cooperación incluye a quienes "ayudan pero no participan directamente en la planificación o ejecución del delito, ni tienen conocimiento pleno del mismo", lo que implica que la colaboración que ofrecen para la consumación del delito "no es suficiente para satisfacer los requisitos de la autoría del artículo 43 (d) del Código Penal de 2004, supra, el cual requiere que la participación del coautor en el hecho punible sea indispensable". *Pueblo v. Sustache Sustache,* supra, págs. 304-305. En cambio, analizó que "la participación del cooperador no es ni imprescindible ni indispensable para la ejecución del delito, pues el cooperador no es quien tiene el dominio del hecho" y que se trata de una figura que, así como la figura de la complicidad en España, "está totalmente influenciada por el principio de accesoriedad". *Pueblo v. Sustache Sustache,* pág. 305.

En torno a la figura del coautor, el Máximo Foro afirmó que estos participan en la elaboración del plan desde sus actos preparatorios, simultáneos y hasta los posteriores a la comisión del delito, siempre que éstos fueran concertados desde el principio del acuerdo:

> Ante esta situación, es necesario **distinguir el conocimiento del delito que tiene un coautor del que tiene un cooperador.** El conocimiento del delito que tiene el

coautor es producto de su concierto y común acuerdo para ejecutarlo. Esto debido a que el coautor participa en la elaboración del plan desde sus actos preparatorios, simultáneos y hasta los posteriores a la comisión del delito, ***siempre que éstos sean concertados desde el principio del acuerdo***. ***A los cooperadores no se les requiere este grado de conocimiento.*** Éstos no tienen un conocimiento pleno del delito, porque el cooperador no participa directamente en la planificación o ejecución del delito, razón por la cual su contribución a la ejecución del delito no es indispensable. (Énfasis suplido).

*Pueblo v. Sustache Sustache,* supra, pág. 322.

Ahora bien, como comentó al respecto la Profesora Nevares Muñiz, el actual Código Penal de Puerto Rico, Ley Núm. 146-2012, 33 LPRA sec. 5001 et seq., *"eliminó la figura del cooperador introducida en el 2004"* en el Artículo 43 del actual Código, regresando así a la teoría de la equivalencia, bajo la cual solo existe una categoría de autores. D. Nevares Muñiz, *Código Penal de Puerto Rico Comentado Por Dora Nevares Muñiz,* Instituto para el Desarrollo del Derecho, Inc., Ed. 2012, San Juan, Puerto Rico, pág. 83. En torno al razonamiento detrás de dicha eliminación, la Profesora Nevares Muñiz citó el Informe de la Medida, P del S 2021, págs. 48-49, que reza de la siguiente manera:

De todas las figuras creadas en el Código Penal de 2004, la figura del cooperador fue la más conflictiva. Esta figura es ajena a nuestra tradición jurídica y aun cuando nuestro Tribunal Supremo tuvo la oportunidad de estudiarla y definirla, su interpretación y aplicación ha enfrentado ciertas dificultades. Nuestra tradición jurídica es procesar como autor a todo aquel que participó en la comisión de un delito sin necesidad de distinguir grados de participación o de importancia o protagonismo. Véase, Ponencia del Panel sobre el Fiscal Especial Independiente al P. del S. 2021. Pág. 8.

Según la ponencia del Departamento de Justicia, se elimina la figura del cooperador como persona responsable del delito, según concebida en el Código Penal vigente. *"Muchos coautores de delito, mediante argucias [sic] jurídicas, se han*

*beneficiado de esta figura reduciendo considerablemente sus penas, aunque los hechos delictivos demuestren claramente que su participación en los mismos fue de calidad de coautores. Esta situación también obstaculiza el esclarecimiento de delitos por parte del Estado debido a que los coautores de delitos, amparándose bajo la figura del cooperador, no se exponen a penas de cárcel altas que los motiven a cooperar con el Estado en dicha encomienda".* Véase, Ponencia del Departamento de Justicia sobre el P. del S. 2010, Págs. 15-16.

D. Nevares Muñiz, op.cit., pág. 84.

Ahora bien, con las enmiendas de la Ley 246-2014, el Código Penal de Puerto Rico sufrió varios cambios. Conforme a estos, el Artículo 43 del Código Penal de Puerto Rico, supra, sec. 5066, ahora lee de la siguiente manera: "Son responsables de delito los **autores**, sean personas naturales o jurídicas." (Énfasis nuestro).

Como parte de estos cambios, se enmendó el Artículo 44(h) del actual Código, el cual disponía que "[l]os que cooperan de cualquier otro modo en la comisión del delito" eran considerados autores del mismo. Luego de la Ley 246-2014, el inciso (h) del Artículo 44 fue eliminado.

También se enmendaron los incisos (d) y (g) del Artículo 44 del Código Penal de Puerto Rico de 2012, sec. 5067, para que leyesen como sigue:

Se consideran *autores*:
(a) ...
(b) ...
(c) ...
*(d) Los que a propósito o con conocimiento cooperan con actos anteriores, simultáneos o posteriores a la comisión del delito, que contribuyen significativamente a la consumación del hecho delictivo.*
(e) ...
(f) ...
*(g) Los que a propósito ayudan o fomentan a que otro lleve a cabo conducta que culmina en la producción de un resultado prohibido por ley, siempre que actúen con el*

*estado mental requerido por el delito imputado con relación al resultado.*

Cónsono con la redefinición de estos conceptos, se enmendó el Artículo 45 del Código Penal de Puerto Rico de 2012, sec. 5068, para disponer que "[s]on cooperadores los que, con conocimiento, cooperan mediante actos u omisiones que no contribuyen significativamente a la consumación del delito".

Concluye la Profesora Nevares-Muñiz que la figura del cooperador, procedente del Código Penal de 2004, se delimitó en nuestro actual Código, "pero con una definición más clara". D. Nevares-Muñiz, *Código Penal de Puerto Rico Comentado por Dora Nevares Muñiz*, San Juan, Inst. para el Desarrollo del Derecho, Inc., 2015, pág. 88. Además, menciona que el cooperador "está en una relación de subsidiariedad con respecto a la figura principal del autor" por lo que se aplicará únicamente cuando la disposición principal, el Artículo 44(d), no aplique. Apunta que ello es así porque la actividad del cooperador "es secundaria o accesoria a la actividad del autor y sobre todo es una contribución 'no significativa', trivial, de poco valor". D. Nevares Muñiz, op.cit., pág. 88.

### E. Deferencia al Jurado

El trato marcado por deferencia hacia las determinaciones de los jurados se remonta al Siglo XVIII, cuando el derecho a juicio por jurado del "common law" inglés, fue ratificado mediante la aprobación de la Sexta Enmienda de la Constitución de los Estados Unidos de América. *Peña-Rodríguez v. Colorado*, 580 US 206, 231 (2017).

Las decisiones que toma un jurado son protegidas por el conocido "no impeachment rule", el cual fue aplicado por primera vez en el caso inglés del año 1785, *Vaise v. Delaval,* 1 T.R. 11, 99 Eng. Rep. 944 (K.B. 1785). En este caso, se les impidió a los

convictos del caso a cuestionar los procesos deliberativos del jurado. Las cortes estadounidenses fueron adoptando esta regla poco a poco, y hoy día, está consagrada en la Regla 606 de las Reglas de Evidencia Federal, 28 USCA.

Ahora bien, por otro lado, en Puerto Rico, el derecho a ser juzgado por un Jurado está consagrado en el Artículo II, Sección 11 de nuestra Constitución. También, así está consolidado estatutariamente, en la Regla 111 de las Reglas de Procedimiento Criminal, supra.

Este cuerpo, constituido de doce (12) personas de la comunidad, está encargado de recibir y evaluar la prueba presentada durante un juicio, y finalmente adjudicarla. Nuestro Tribunal Supremo describió de manera asertiva las funciones de este ensamblaje de juzgadores de la siguiente manera:

> La opción de un juicio ante un panel de jurados implica conferir a éstos la administración de la justicia, esto es la determinación final sobre culpabilidad. El Jurado, compuesto por una muestra representativa de la comunidad del acusado tiene como encomienda evaluar la prueba, recibir instrucciones sobre el derecho aplicable, deliberar en secreto y rendir un veredicto final. De entender el Jurado que el acusado incurrió en responsabilidad criminal por los hechos que se le imputan deberá determinar el delito específico o el grado del mismo, por el cual éste deberá responderle a la sociedad.
>
> *Pueblo v. Echevarría,* 128 DPR 299, 337-338 (1991).

Nuestro Máximo Foro ha sido consistente: las determinaciones de un Jurado merecen y demandan credibilidad, siempre que las mismas no estén vetadas de error manifiesto, pasión, perjuicio o parcialidad. *Pueblo v. Negrón Ramírez,* supra; *Pueblo v. Acevedo Estrada,* supra, págs. 98-99; *Pueblo v. Colón Castillo,* 140 DPR 564, 580 (1996); *Pueblo v. Rosario Reyes,* supra, pág. 598; *Pueblo v. Rivera Robles,* 121 DPR 858, 869-870 (1988); *Pueblo v. Cabán Torres,* 117 DPR 645, 653-654 (1986). En ausencia

de tales circunstancias, la jurisprudencia impide la intervención en apelación. Id. Ello es así puesto que "[e]l jurado es el más indicado para otorgar credibilidad y dirimir conflictos de prueba. Son estos quienes normalmente están en mejores condiciones de aquilatar la prueba, pues gozan de la oportunidad de ver y escuchar directamente a los testigos." *Pueblo v. Ruiz Ramos*, 125 DPR 365, 400-401 (1990), citando a *Pueblo v. Pellot Pérez*, 121 DPR 791 (1988)." Véase, además, *Pueblo v. Rosario Reyes,* supra, págs. 588-599.

Ahora bien, esto no es sinónimo a infalibilidad. Ello tampoco implica que se hará caso omiso a los errores que haya cometido el foro de instancia en su evaluación. *Pueblo v. Pagán Díaz,* 111 DPR 608, 621 (1981). Después de todo, los tribunales apelativos, al igual que el tribunal sentenciador, tienen el derecho y el deber de "tener la conciencia tranquila y libre de preocupación". *Pueblo v. Irizarry*, supra, pág. 790; *Pueblo v. Acevedo Estrada,* supra, pág. 100. Un Tribunal revisor puede intervenir en la apreciación de un jurado, que culmine en un fallo condenatorio, cuando una evaluación de la prueba produzca "serias dudas, razonables y fundadas, sobre la culpabilidad del acusado." *Pueblo v. Carrasquillo Carrasquillo*, 102 DPR 545, 551 (1974); *Pueblo v. Rivera Arroyo*, 100 DPR 46 (1971).

A esto añadimos que, tanto nuestro Tribunal Supremo, como el marco normativo sobre el derecho probatorio, han reconocido que un hecho puede ser establecido con solo el testimonio de una persona. *Pueblo v. Rodríguez Román*, 128 DPR 121, 128 (1991). Así también, la Regla 110 (D) de las Reglas de Evidencia, supra, establece que "[l]a evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley".

Por tanto, las determinaciones del juzgador de los hechos no deben ser descartadas arbitrariamente ni deben sustituirse por otro

criterio a menos que de la prueba admitida surja que no existe base suficiente para apoyarlas. *Pueblo v. Maisonave Rodríguez,* 129 DPR 49, 62 (1991). Es decir, solo debemos apartarnos de esta deferencia cuando la apreciación de la prueba se alejó demasiado de la prueba presentada o cuando la realidad no concuerda con la evidencia sometida durante el juicio, o ésta resultare increíble o imposible. *Pueblo v. Acevedo Estrada,* supra, págs. 98-99.

### F. Pertinencia y admisibilidad de evidencia

El deber de salvaguardar el debido proceso de ley, consagrado en la Sección 7 del Artículo II de la Constitución de Puerto Rico, y en la Quinta y Decimocuarta Enmienda de la Constitución de Estados Unidos, se refiere al "derecho de toda persona a tener un proceso justo y con todas las garantías que ofrece la ley, tanto en el ámbito judicial como en el administrativo". *Marrero Caratini v. Rodríguez Rodríguez,* 138 DPR 215, 220 (1995).

Este derecho es binario, y en su vertiente procesal, el debido proceso de ley constituye una protección abarcadora en lo que respecta al procedimiento criminal. La misma protege a la persona imputada o acusada de delito, dándole "un arma ofensiva y defensiva; ***impide al Estado ciertos métodos de investigación y procesamiento, y también proporciona al acusado armas ofensivas,*** como el derecho a cierto descubrimiento de prueba y a presentar cierta evidencia". Ernesto Luis Chiesa Aponte, II *Derecho Procesal Penal de Puerto Rico y Estados Unidos,* pág. 2 (1995). (Énfasis nuestro).

La Regla 109 de las Reglas de Evidencia, supra, es uno de esos mecanismos procesales que pueden ser útiles durante el acto del juicio, ya que sirve para dilucidar o determinar la admisibilidad de evidencia. Dicha determinación sobre la admisibilidad de la prueba debe hacerse en términos ideales, antes de que se presente,

para que no llegue a oídos del juzgador prueba que no cumple con los requisitos evidenciarios. R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño, Nuevas Reglas de Evidencia 2010*, 3ra. ed., Puerto Rico, Ediciones SITUM, 2010, pág. 413. En particular, cuando se trata de un juicio por jurado, es fundamental que éste no se contamine con prueba que no cumple con la normativa aplicable. Id. La referida regla establece las consideraciones relativas a las determinaciones preliminares de admisibilidad de evidencia, y las mismas leen como sigue:

> (a) Admisibilidad en general. — Las cuestiones preliminares en relación con la capacidad de una persona para ser testigo, la existencia de un privilegio o la admisibilidad de evidencia serán determinadas por el tribunal salvo a lo dispuesto en el inciso (b) de esta regla. Al hacer tales determinaciones, el tribunal no queda obligado por las Reglas de Derecho Probatorio, excepto por aquellas relativas a privilegios.
>
> (b) Pertinencia condicionada a los hechos. — Cuando la pertinencia de evidencia ofrecida depende de que se satisfaga una condición de hecho, el tribunal la admitirá al presentarse evidencia suficiente para sostener la conclusión de que la condición ha sido satisfecha. El tribunal puede también admitir la evidencia si posteriormente se presenta evidencia suficiente para sostener la conclusión de que la condición ha sido satisfecha.
>
> [...]

Ahora bien, huelga mencionar que la evidencia admisible requiere la evaluación de su pertinencia. Por ello, la Regla 403 de las Reglas de Evidencia, supra, aborda lo relativo a la ***evidencia que, aunque pertinente es excluida por fundamentos de perjuicio, confusión*** o pérdida de tiempo. Dicha regla lee como sigue:

> Evidencia pertinente puede ser excluida cuando su valor probatorio queda sustancialmente superado por cualesquiera de estos factores:
>
> a. ***riesgo de causar perjuicio indebido***
> b. ***riesgo de causar confusión***
> c. ***riesgo de causar desorientación del Jurado***
> d. dilación indebida de los procedimientos

e. innecesaria presentación de prueba acumulativa.

(Énfasis suplido).

El propósito de esta regla es poder codificar exclusiones sobre evidencia que *de facto* es admisible, pero no pertinente. La regla anteriormente citada responde a la imposibilidad de lograr la codificación de todas las posibles reglas de exclusión. Ernesto Luis Chiesa Aponte, *Reglas de Evidencia Comentadas*, 1era ed., Ediciones SITUM, 2016, pág. 75; Ernesto Luis Chiesa Aponte, Tratado de Derecho Probatorio: *Reglas de Evidencia de Puerto Rico y Federales*, San Juan, Pubs. J.T.S., 1998, Tomo I, pág. 7. A raíz de lo anterior, se trata de una regla que debe ser utilizada con precaución y prudencia por los tribunales. Id. Esto, ya que, según la Regla 402 de las Reglas de Evidencia, supra, toda evidencia pertinente es admisible, salvo que le sea aplicable una regla de exclusión.

El Tribunal Supremo ha reconocido que el fundamento del peligro de causar perjuicio indebido, primer factor enumerado por la Regla 403 de Evidencia, es el factor más invocado. *Pueblo v. Ortiz Pérez*, 123 DPR 216, 228 (1989). El Máximo Foro Judicial, al interpretar la equivalente Regla 19 de Evidencia (actual Regla 403), expresó que:

> Por supuesto, toda prueba es "perjudicial" en la medida que favorece a una parte y perjudica a otra, pero este no es el tipo de perjuicio al que se refiere la regla. En términos generales se trata de ***prueba que puede conducir a un resultado erróneo cuando se apela meramente -y aunque no únicamente- a los sentimientos y a la emoción***. Hay que recordar, sin embargo, que particularmente en la litigación criminal en ocasiones es preciso recrear ante los ojos del jurado situaciones desagradables que deben ser legítimamente objeto de prueba. No toda evidencia que pueda conmover el ánimo del jurado constituye materia a ser excluida.
>
> *Pueblo v. Ortiz Pérez*, pág. 228.

(Énfasis suplido).

Sobre lo que constituye perjuicio indebido, el Tribunal Supremo señaló lo siguiente: *"**Perjuicio indebido se refiere más bien a evidencia cuyo valor objetivo es mucho menor al que puede recibir por parte del juzgador en virtud de factores, por ejemplo, emocionales"***. *Pueblo v. Nazario*, 138 DPR 760, 779 (1995). (Énfasis suplido).

Por último, el profesor Chiesa Aponte también se ha expresado sobre el perjuicio a la parte contraria, exponiendo:

> Cuando el tribunal realiza el balance correspondiente entre valor probatorio y efecto perjudicial indebido, aparte de considerar el valor probatorio o fuerza intrínseca de la evidencia, debe también considerar la necesidad de la misma para el proponente, en el sentido de *si cuenta con otro tipo de evidencia, sin el potencial de perjuicio indebido, para establecer lo que intenta probar con la evidencia en cuestión.* Si lo mismo puede ser probado con otra evidencia claramente admisible, el balance puede inclinarse hacia la exclusión.
>
> Ernesto Luis Chiesa Aponte, *Tratado de Derecho Probatorio: Reglas de Evidencia de Puerto Rico y Federales*, op. cit., pág. 11.
> (Énfasis suplido).

Finalmente, estamos de acuerdo con el Profesor Chiesa Aponte, quien entiende que el riesgo de causar confusión es similar al fundamento del riesgo de causar desorientación del Jurado. Ernesto Luis Chiesa Aponte, *Tratado de Derecho Probatorio: Reglas de Evidencia de Puerto Rico y Federales*, op. cit., pág. 11. Sobre dichos fundamentos, expone que el riesgo de confusión usualmente se refiere a que la evidencia es demasiado complicada, de forma tal que su valor probatorio no compensa la confusión que se crea. Ernesto Luis Chiesa Aponte, *Reglas de Evidencia Comentadas*, op. cit., pág. 79.

**III.**

Navarro Torres se encuentra cumpliendo una pena de reclusión de 115 años con 6 meses. En el año 2023, un jurado determinó que el apelante fue coautor del asesinato de Castro Romero, además de hallarlo incurso en los delitos de apropiación ilegal, conspiración y dos cargos al amparo de la Ley de Armas de Puerto Rico de 2020. Inconforme con este resultado, el apelante ha recurrido ante esta Curia para impugnar el veredicto.

En su recurso apelativo, Navarro Torres hace cuatro (4) señalamientos de error. En su *primer y segundo señalamiento de error*, el apelante alega que el TPI-Bayamón erró al encontrarlo culpable de todos los cargos que se le presentaron, sin haberse establecido, más allá de duda razonable, la conexión entre su persona y la prueba presentada. Además, alegó que no se demostró en el juicio que este hubiese cometido los delitos por los cuales se le acusó, a título de coautor. *No le asiste razón.*

Como ilustramos previamente, nuestro actual Código Penal del 2012, en su Artículo 44, define qué sujetos pueden considerarse autores de un delito. Por otro lado, el Artículo 45 del referido Código, delimita la figura del cooperador. Luego de estudiar cuidadosamente ambas figuras, y el tracto jurídico que las ha formado a través de la Ley y la jurisprudencia, queda claro que el autor de un delito es aquel, cuya participación, es indispensable para la consumación del delito. Por su parte, el cooperador es una figura cuya participación en un delito, aunque potencialmente dirigida a su consumación, no es significativa o necesaria para el mismo.

Relevante al caso de marras, apuntalamos que, como parte de las categorías de autoría en el Código Penal, nuestro ordenamiento jurídico considera autores a aquellos cuya contribución al delito es anterior, simultánea o posterior a los hechos. También son autores quienes ayudan o fomentan la conducta delictiva.

Ahora bien, plantea Navarro Torres en su recurso que no puede ser considerado coautor de los hechos del caso de epígrafe porque para probarlos, es necesario, no solo que se prueben los elementos de los delitos, sino que se conecten a él. Añade que esto debe probarse más allá de duda razonable. Para sostener su argumento, nos indica el apelante que, en sus testimonios, ni Henry Hernández ni los demás testigos, declararon con certeza, que Navarro Torres participó en los delitos. Sostiene, además, que el testimonio de Henry Hernández, en todo momento, centró únicamente a los coacusados en el proceso delictivo que terminó con la vida de la víctima.

Sin embargo, obvia el apelante que, conforme al derecho previamente esbozado, nuestra jurisprudencia ha establecido que, así como el que está presente en la comisión del delito no es necesariamente el perpetrador del mismo, tampoco es necesario que un sujeto esté presente en los hechos de un crimen, para ser coautor de ellos. En su recurso, el apelante también prescinde de elaborar en sus argumentos, que nuestra jurisdicción reconoce que un hecho puede ser demostrado satisfactoriamente *mediante prueba circunstancial.* Las Reglas de Evidencia disponen que la prueba de esta naturaleza puede ser utilizada para establecer un hecho, probando la existencia u ocurrencia de otro.

Luego de evaluar, no solo los alegatos de las partes, sino la *transcripción de la prueba oral*, este Tribunal entiende que la convicción del apelante, como *coautor* de los hechos, aunque establecida *mediante prueba circunstancial*, se sostiene en derecho. Además, consideramos que la misma cumplió con el estándar probatorio de más allá de duda razonable. El Ministerio Público, mediante los testimonios de los agentes y el de Henry Hernández, pudo probar los elementos de los delitos. La conexión entre el apelante y estos hechos fue establecida, satisfactoriamente,

mediante el testimonio del testigo de cargo, Henry Hernández. A satisfacción del Foro Primario, y también de este, se logró establecer que la participación de Navarro Torres fue *en calidad de coautor.*

Del testimonio de Henry Hernández, escuchado y creído por los señores del Jurado, surge que este y los coacusados respondían únicamente a Navarro Torres, con relación a sus labores en el 'punto' del Barrio Galateo en Río Grande. A preguntas del Fiscal, el testigo en cuestión explicó que, entre el tipo de órdenes recibidas por el apelante, se encontraba la de "matar gente".[7] Aunque el testigo no estableció *ad verbatim* que fue el apelante quien ordenó el asesinato de la víctima, mediante este testimonio, se puede razonablemente inferir que las órdenes que recibieron ese día provinieron de él.

Por otro lado, en sus declaraciones, Henry Hernández indicó que, posterior a que el coacusado Filomeno Delgado asesinara a Castro Romero, iban en el auto de este último, cuando el otro coacusado, Navarro Ramos, hizo una llamada en la que dijo "el trabajo estaba hecho".[8] Acto seguido, testificó que se encontraron con el apelante y de su testimonio surge que fue este último quien se montó en el vehículo de la víctima, y la desapareció.[9] Añadió que, luego de deshacerse del auto mencionado, fueron a una casa de empeñó, en la que el aquí apelante, Navarro Torres, empeñó pertenencias de Castro Romero, y se apropió del dinero.[10]

Entendemos que los hechos reseñados coinciden con la definición de autores del Artículo 44, incisos (d) y (g) del Código Penal de Puerto Rico, supra. Es decir, del testimonio de Henry Hernández, en especial de aquellos hechos que hemos en esta sección reproducido, son *prueba circunstancial* sobre como el

---

[7] Transcripción de la prueba oral, pág. 256.
[8] *Id.* pág. 316.
[9] *Id.* págs. 316-322.
[10] *Id.* págs. 322-324.

apelante fomentó la comisión de los delitos, ordenando el asesinato de Castro Romero, y como con sus actos posteriores al delito, cooperó para la consumación de este.

De los eventos narrados por este testigo, podemos inferir que la llamada que hizo Navarro Ramos en la que anunció haber completado un trabajo – inmediatamente después de asesinar a la víctima – fue al apelante. Podemos así deducirlo, ya que inmediatamente después de la llamada, tanto el testigo como los coacusados se encontraron con Navarro Torres.

Finalmente, concluimos que la prueba circunstancial del testimonio de Henry Hernández fue suficiente en derecho para establecer, más allá de duda razonable, la conexión entre el apelante y los hechos, ya que el mismo día de los hechos, este llevó a cabo dos acciones, posteriores al asesinato, que contribuyeron a la consumación de los delitos. Es decir, Navarro Torres tomó el vehículo de la víctima, y se deshizo de ella con prontitud, además de haber empeñado sus pertenencias. Todo esto, el mismo día de los hechos, y con muy poco tiempo entre el asesinato y los eventos en cuestión.

Aun si quisiéramos evaluar los hechos de este caso a la luz de la figura del cooperador, la cual es muy parecida al coautor y sufre medidas menos punitivas, no podríamos concluir lo contrario al Foro Primario. Según el derecho previamente plasmado sobre el coautor y cooperador, estamos de acuerdo con la profesora Nevares, quien afirma que, en nuestro actual ordenamiento jurídico-penal, los elementos del cooperador solo se podrán materializar cuando no apliquen aquellos del autor, al amparo de la Regla 44(d) de Procedimiento Criminal, supra. Es decir, si el acusado no actuó significativamente, ni lo hizo a propósito o con conocimiento – antes, durante o después del delito – entonces podría considerar su participación aquella de un cooperador.

Concluimos que el apelante, no solo tenía conocimiento de lo que habían hecho los coacusados con la víctima, sino que su relación con estos, sirven para inferir que Navarro Torres ordenó el asesinato. Además, los eventos posteriores al delito infieren su participación significativa e indispensable para la consumación de este. Por ello, justipreciamos que el Foro Apelado no se equivocó al declararlo culpable por los delitos cometidos, como coautor de ellos.

En el *tercer y cuarto señalamiento de error*, el apelante arguye que el TPI-Bayamón se equivocó al permitir que el Ministerio Público le hiciera una serie de preguntas a varios testigos, en violación a sus derechos, al amparo de las Reglas 402 y 403 de las Reglas de Evidencia, supra. *No le asiste razón.*

En su recurso, el apelante impugna unas preguntas hechas por el Ministerio Público a los agentes Ramos Méndez y Velázquez, y a Henry Hernández. Con relación a los testimonios de los agentes, el apelante arguye que la evidencia del arma de fuego recuperada de Filomeno Delgado era impertinente. Entiende que, al así hacerlo, el Foro Primario provocó desorientación y confusión en el Jurado. *No nos convence.*

Como vimos, lo cierto es que el Ministerio Público, en el debido ejercicio de sus funciones, viene obligado a pasar prueba sobre todos los elementos del delito en el pliego acusatorio. El asesinato de Castro Romero fue perpetrado por la conspiración de más de una persona, incluida, entre ellas, el apelante.

Es cierto que el arma incautada, sobre la que se pasó prueba, no fue obtenida del apelante. Sin embargo, por ser Navarro Torres coautor del delito, el Ministerio Público necesitaba desfilar prueba sobre ella en su juicio. De esta manera, podía trazarle al Jurado los elementos que se perfeccionaron para la consumación del delito. Como mencionamos previamente, un acusado no tiene que haber

estado presente ni participar físicamente del delito, para ser conspirador y coautor de este.

Si prosperara el argumento que nos plantea el apelante, entonces sería imposible traer a la justicia a los coautores de delitos, como el aquí apelante, que no se hayan involucrado físicamente en el acto criminal. Es decir, siempre y cuando aquellos que participen de manera indispensable en un delito, eviten estar en posesión del objeto o el arma utilizada para ello, no podrían ser juzgados como coautores. Esto, ya que el Ministerio Público no podría pasar prueba sobre el método utilizado, obstaculizando, como cuestión de derecho, el desfile de prueba y la presentación del caso. Por esto, colegimos que, no solo era pertinente la admisión de esta prueba, sino necesaria para que el Ministerio Público pudiera presentarle efectivamente su caso al Jurado.

Por otro lado, también impugna las preguntas que se le hicieron al agente Velázquez, sobre el documento de las advertencias que le administró al testigo Henry Hernández, a quien entrevistó luego de los hechos. Argumenta el apelante que esta evidencia no era pertinente, ya que, también, provocó confusión y desorientación en el Jurado. En su petitorio, nos plantea Navarro Torres que esta prueba estaba adherida a una persona distinta al apelante. *No nos convence.*

De la transcripción de la prueba oral surge que la defensa del apelante se opuso en su momento al desfile de esta prueba. Sin embargo, estamos de acuerdo con el Foro Apelado, quien, durante una de las vistas al amparo de la Regla 109 de las Reglas de Evidencia, supra, escuchó los argumentos de las partes. Para fundamentar su decisión de permitir la prueba, razonó el Juez del Foro Primario que el Ministerio Público y la defensa planteaban dos cosas distintas: la primera arguye que el testimonio de Henry Hernández señalaría al apelante como el autor de los hechos,

mientras que la segunda planteó que no lo haría. Por eso, correctamente entendió necesario escuchar la prueba, por parte del Agente Velázquez, con relación a la entrevista que le hizo al testigo en cuestión. El magistrado del Foro Apelado les indicó que, si Henry Hernández señalaba, en su momento, a Navarro Torres como el "autor de los hechos, esa es la pertinencia del caso. Es muy pertinente".[11]

El apelante, de igual manera, arguye que el testimonio del agente Velázquez, sobre las advertencias que le hizo al testigo Henry Hernández, provocó confusión y desorientación al Jurado. Lo cierto es que nuestro Tribunal Supremo no se ha expresado claramente a fines de interpretar o definir los contornos de la aludida confusión y desorientación de la Regla 109 de las Reglas de Evidencia, supra, en el contexto de un testigo no pericial como este.

Sin embargo, la literatura ha intentado interpretar estos conceptos, en el contexto de prueba pericial. En síntesis, ha concluido que la prueba de esta naturaleza puede generar confusión y desorientación, cuando es presentada en un lenguaje muy complicado, técnico o matemático, ya que su contenido suele estar "fuera del conocimiento regular del juzgador". Olga Elena Resumil & Rafael Faría González, *Confiabilidad del Testimonio Pericial: La Ingeniería Forense y la Técnica de Reconstrucción de Escenas como Auxiliar al Proceso Judicial,* 68 Rev. Jur. U.P.R. 827, 851 (1999); 1 Ernesto Chiesa Aponte, *Tratado de Derecho Probatorio,* Sección 1.3, en la pág. 18 (1999).

Extrapolemos este principio al testimonio del agente Velázquez, quien testificó sobre las advertencias que le hizo al testigo Henry Hernández en su entrevista. El hecho de que un testigo declare sobre un individuo que no sea el acusado, no nos resulta

---

[11] Transcripción de la prueba oral, pág. 166.

demasiado intricado, como para que un cuerpo de Jurado sea desorientado con relación al sujeto. El agente en cuestión no testificó sobre múltiples personas, y el contenido de su narración no resultó complicada.

Por otro lado, resaltamos nuevamente lo expuesto por el profesor Chiesa Aponte, quien entiende que el peligro de la confusión en la evidencia recae en que su valor probatorio no compense la desorientación causada. Ernesto Luis Chiesa Aponte, *Reglas de Evidencia Comentadas*, op. cit., pág. 79. Lo cierto es que, así como expuso el Foro Apelado, el posible valor probatorio de esta porción de su testimonio, superó durante el juicio cualquier posible confusión o desorientación al Jurado.

Finalmente, resulta menester que reflexionemos, en el contexto de nuestra decisión, la deferencia que nuestro ordenamiento jurídico nos ordena otorgarle a las determinaciones y apreciaciones del Jurado. Este cuerpo es aquel que tuvo ante sí la prueba, y quien escuchó en corte abierta los testimonios vertidos. Este Foro, en ausencia de error manifiesto, perjuicio o parcialidad, no puede entenderse posicionado con la misma ventaja, al estudiar la prueba.

Luego de evaluar el expediente, la transcripción de la prueba oral y la evidencia que obra en autos, con el minucioso cuidado que un recurso como este merece, *no hemos encontrado justificación en derecho para conceder la solicitud que el aquí apelante nos hace.*

**IV.**

Por los fundamentos que anteceden, confirmamos la *"Sentencia"* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones